RICHARD C. MOENNING, Appellant, v. ILLINOIS BELL TELEPHONE COMPANY, Appellee.

First District (3rd Division)   No. 84—2512

Opinion filed December 18, 1985.

Richard C. Moenning, of Chicago, for appellant, *pro se.*

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos and Kathleen Nolan, Special Assistant Attorneys General, of Chicago, of counsel), for appellee Illinois Commerce Commission.

L. Bow Pritchett, Robert Guritz, and Georgia J. Reithal, all of Illinois Bell Telephone Company, of Chicago, for appellee Illinois Bell Telephone Company.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Richard C. Moenning filed a formal complaint with the Illinois Commerce Commission against defendant Illinois Bell Telephone Company, a privately owned company regulated by the Commission. The gravamen of the complaint relates to Illinois Bell's practice of requiring a security deposit from customers who have had their telephone service discontinued because of nonpayment of telephone bills. After conducting hearings, the Commission entered an order finding that Illinois Bell could properly request a security deposit from plaintiff. Plaintiff appealed to the circuit court of Cook County, and the court upheld the Commission's order. Plaintiff appeals.

Plaintiff resides in Evanston, where he receives residential telephone service from Illinois Bell. Illinois Bell's records show that during 1980, plaintiff paid April through October bills late. Illinois Bell terminated plaintiff's residential service for nonpayment of the May 1980 charges, and restored service after late payment was made. Illinois Bell mailed plaintiff disconnect warnings for all seven of the late payments.

Plaintiff owed Illinois Bell $38.43 for the October 1980 charges.

Illinois Bell records show that it sent plaintiff a final disconnect notice for nonpayment of the October charges, in accordance with the Commission's General Order 197. The disconnect notice is a red card entitled "FINAL NOTICE PRIOR TO DISCONNECTION" and includes information as to how the consumer can complain to Illinois Bell or to the Commission. Plaintiff could not recall whether he received such a notice as to the October bill, and had "no idea" how many similar notices he had received during 1980 or for which months.

On December 3, 1980, plaintiff gave Illinois Bell a check for $38.43 to cover the October 1980 bill. It was returned to Illinois Bell on Friday, December 12, 1980, for nonsufficient funds in plaintiff's account. Illinois Bell's records indicate that it made an attempt to telephone plaintiff on December 15. Plaintiff's residential service was disconnected that day. Plaintiff promptly spoke to an Illinois Bell service representative who, according to plaintiff's testimony, stated that she had attempted to reach plaintiff by telephone.

Plaintiff had a conference call that day with representatives of Illinois Bell and the Commission to discuss a solution. Plaintiff's residential telephone service was restored later that evening after he agreed to deliver cash for the October payment.

Illinois Bell then sent plaintiff a request for a $125 security deposit, and threatened to discontinue his service if the security deposit was not paid. Plaintiff filed a complaint with the Commission requesting a hearing before denial of services and the demand of a deposit, and also asking for "costs and damages" in the form of credits.

After conducting hearings, the Commission entered its order finding that Illinois Bell's notice of termination to plaintiff was insufficient under General Order 197 because its attempt to contact plaintiff was unsuccessful; that it was proper to require a security deposit from plaintiff because he was late with his payments more than six times in 12 months; that the security deposit requirement and termination of service did not give rise to a civil rights action under 42 U.S.C. sec. 1983 (1982) or constitute a due process violation; and that public utility transactions were statutorily exempt from the Consumer Protection Act and the Truth in Lending regulations. The Commission also denied plaintiff's request for cost and damages as being outside its jurisdictional scope.

Illinois Bell and plaintiff both sought rehearing. The Commission denied plaintiff's request for rehearing. The Commission did grant Illinois Bell's petition for rehearing, in which Illinois Bell argued that General Order 197 only required an attempt to.contact a customer on termination date, and that Illinois Bell made that attempt. Plaintiff

filed the present action, and the trial court affirmed the Commission's orders.

On appeal, plaintiff contends that the Commission acted without statutory authority in promulgating General Order 197, which allows Illinois Bell to terminate telephone services and require security deposits; that the Commission's rulings regarding the sufficiency of the termination notice sent to plaintiff and the reasonableness of the security deposit required of plaintiff are against the manifest weight of the evidence; that the termination procedure and security deposit requirement violated 42 U.S.C. sec. 1983 (1982) and due process requirements; that the security deposit requirement violated Federal protection statutes; that the trial court improperly injected its personal feelings, thereby distorting its judgment; that the trial judge made factual errors, indicating he was not familiar with the record; and that the Commission improperly delegated its rule making power.

■■ Plaintiff initially contends that the Commission does not have the authority to promulgate orders authorizing cash deposits for customers who have made late payments. The legislature does not expressly grant the Commission power to restrict Illinois Bell's security deposit practices. (See generally Ill. Rev. Stat. 1979, ch. 111⅔, par. 1 *et seq.*) The Commission, however, has broad discretion to regulate the rate policies of public utilities. (*Alton Water Co. v. Illinois Commerce Com.* (1978), 60 Ill. App. 3d 553, 377 N.E.2d 385.) Section 41 of the Public Utilities Act authorizes the Commission to determine just and reasonable rates or other charges, and practices affecting rates or other charges, and to fix the same by order. (Ill. Rev. Stat. 1979, ch. 111⅔, par. 41.) The trial court was correct in stating that the authority to fix rates necessarily includes credit regulation. A security deposit requirement is a credit practice that falls under the area of rate regulation. See Ill. Rev. Stat. 1979, ch. 111⅔, par. 10.16; see also *Wood v. Public Utilities Com.* (1971), 4 Cal. 3d 288, 481 P.2d 823, 93 Cal. Rptr. 455, *appeal dismissed* (1971), 404 U.S. 931, 30 L. Ed. 2d 245, 92 S. Ct. 293, and 64 Am. Jur. 2d *Public Utilities* sec. 46 (1972).

The soundness of the policy at issue was established when the United States Supreme Court recognized that a utility, like any business, often needs to require security deposits to secure prompt payment. (*Southwestern Telegraph & Telephone Co. v. Danaher* (1915), 238 U.S. 482, 59 L. Ed. 1419, 355 S. Ct. 655; see also *Lucas v. Wisconsin Electric Power Co.* (7th Cir. 1972), 466 F.2d 638, *cert. denied* (1973), 409 U.S. 1114, 34 L. Ed. 2d 696, 93 S. Ct. 928.) In *Illinois Telephone Association v. Illinois Commerce Com.* (1978), 57 Ill. App. 3d 968, 373 N.E.2d 676, while discussing General Order 197, this

court stated at page 972: "Quite obviously, in the promulgation of this order the Commission was functioning under its statutory mandate to have general supervision of all public utilities and to inquire into the management and business of them and to keep itself informed as to the manner and method in which the utilities conduct their business." For these reasons, we find that plaintiff has failed to show that the Commission lacked authority to promulgate General Order 197, or that the policy requiring security deposits is unreasonable.

■ Plaintiff next contends that the Commission's findings were against the manifest weight of the evidence. The Commission's findings and conclusions are to be held *prima facie* true and will not be set aside unless it clearly appears that the findings are against the manifest weight of the evidence. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 72.) The relevant section of General Order 197 requires Illinois Bell to mail a written notice of its intention to discontinue a customer's service due to nonpayment of the past due bill. The notice must be sent separately from other notices or bills, and service cannot be discontinued for at least eight days after mailing. In addition the company "shall attempt" to advise the customer of the termination at the time it occurs. General Order 197, sec. 303(1).

Illinois Bell sent a written notice of termination of service to plaintiff in early December; it attempted to telephone him on December 15; and actually terminated service on December 15. Plaintiff stated that he could not remember whether he had received a final notice, but he may have. Plaintiff also stated that a representative of Illinois Bell told him that she had attempted to reach him.

Under its General Order, the Commission permitted Illinois Bell to make a demand for a cash deposit when the customer is late in three out of 12 billing periods or when service has been discontinued for nonpayment. In the present case, plaintiff made late payments seven times in a 12-month period, and had his service discontinued twice. Plaintiff has failed to show the Commission's findings regarding the propriety of the notice or cash deposit procedures were arbitrary, unreasonable or against the manifest weight of the evidence.

■ Plaintiff further contends that the Commission improperly delegated its rate-making power to Illinois Bell. We find that the Commission's General Order 197 granted no power to Illinois Bell. Instead, it restricted Illinois Bell's common law power to manage its own credit policies. (See *Particular Cleaners, Inc. v. Commonwealth Edison Co.* (7th Cir. 1972), 457 F.2d 189, *cert. denied* (1972), 409 U.S. 890, 34 L. Ed. 2d 148, 93 S. Ct. 107.) We hold that no improper delegation of power occurred in the present case.

■ Plaintiff also argues that the alleged discriminatory termination of plaintiff's telephone service or demand for a security deposit by Illinois Bell, as authorized by General Order 197, constitutes conduct under color of State action that will subject it to a civil rights action under 42 U.S.C. sec. 1983 (1982). In order to establish such a claim, the conduct must have been engaged in under color of State law and such conduct must have infringed upon a property interest protected by the constitution. *Kadlec v. Illinois Bell Telephone Co.* (7th Cir. 1969), 407 F.2d 624, *cert. denied* (1969), 396 U.S. 846, 24 L. Ed. 2d 95, 90 S. Ct. 90.

Illinois Bell's management decision to insure credit by requiring security deposits in some cases did not constitute State action. Extensive, detailed regulation of a public utility by the State does not, by itself, convert the utility's action into State action. (*Jackson v. Metropolitan Edison Co.* (1974), 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449.) Illinois Bell's decision to terminate plaintiff's service was motivated by purely private economic interests. The State receives no direct benefit from enforcement of Illinois Bell's credit policies. (*Kadlec v. Illinois Bell Telephone Co.* (7th Cir. 1969), 407 F. 2d 624.) We hold that the nexus between the State and Illinois Bell's conduct was not sufficient to maintain an action under section 1983. We therefore need not address the constitutional due process issues in relation to Illinois Bell. *Lucas v. Wisconsin Electric Power Co.* (7th Cir. 1972), 466 F.2d 638, *cert. denied* (1973), 409 U.S. 1114, 34 L. Ed. 2d 696, 93 S. Ct. 928.

However, because the Commission has a different status than Illinois Bell, different legal principles apply, and we therefore treat the analysis of section 1983 and due process differently. In promulgating General Order 197, the Commission obviously is acting under color of State law. The question, then, is whether the Commission, on behalf of the State, deprived plaintiff of due process. In deciding whether due process safeguards existed before plaintiff's service was terminated and the security deposit was demanded, we must review the notice to plaintiff of available remedies, and the sufficiency of these remedies. If they satisfy due process requirements, we do not need more. *Lucas v. Wisconsin Electric Power Co.* (7th Cir. 1972), 466 F.2d 638, *cert. denied* (1973), 409 U.S. 1114, 34 L. Ed. 2d 696, 93 S. Ct. 928.

Illinois Bell's notification procedure, in accordance with General Order 197, clearly informed plaintiff of the availability of an opportunity to voice objections or contact the Commission. The final notice included a statement entitled "CONSUMER INFORMATION" detailing

these opportunities. Because plaintiff received seven such notices during 1980, we can hardly say that he had no notice of the opportunity to be heard. (See *Memphis Light, Gas & Water Division v. Craft* (1978), 436 U.S. 1, 56 L. Ed. 2d 30, 98 S. Ct. 1554.) Plaintiff urges, however, that he needed notice of the fact that his check had been returned for insufficient funds. This notice should have come from his own records or from his bank, but not from Illinois Bell.

Moreover, plaintiff had an opportunity for a hearing before termination. According to plaintiff's testimony, he had used informal remedies on numerous occasions. He had made informal arrangements with Illinois Bell to make late payments, and he had met with Illinois Bell and Commission representatives to discuss other alternatives.

Available formal remedies included the route plaintiff eventually chose to take, while his service remained uninterrupted for the five years pending resolution and during which time plaintiff received numerous hearings before several tribunals. Plaintiff was not deprived of due process.

Plaintiff next contends that the credit policies before us are faulty under the Consumer Credit Protection Act. (15 U.S.C. sec. 1602-03 (1982).) As the trial court properly noted, Illinois Bell is statutorily exempt from these laws. It is not a creditor under the Act, and the security deposit requirements are exempt from the Act because the regulations regarding these deposits are on file with the Commission.

Plaintiff urges that he was entitled to "costs and damages," but the Commission has no general authority to fashion an award of damages. (*Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 29 N.E.2d 1014; *Ferndale Heights Utility Co. v. Illinois Commerce Com.* (1982), 112 Ill. App. 3d 175, 455 N.E.2d 334.) Furthermore, plaintiff has failed to show that he has suffered any pecuniary harm.

Inexplicably, plaintiff also appeals from the trial court's denial of defendant's motion to dismiss his action. An appellant can only appeal from those decisions which are adverse to him and cannot appeal from judgments in his favor. (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 111 N.E.2d 329.) Plaintiff cannot raise the issue before this court.

Plaintiff also raises numerous allegations that the trial judge's "injection of personal feelings," interfered with the court's decision. The plaintiff contends that the trial court, burdened by its feelings that plaintiff should win, gave "misplaced deference" to defendant's position. The trial court, after questioning the "morality" of the utility's termination of plaintiff's service and demand for a security de-

posit, stated:

> "On the other hand, the Court cannot reverse the Commission on its personal feelings. It can only reverse if the Commission findings in such regard are not supported by the manifest weight of the evidence or that the Commission violated its own rules in those premises."

The trial court stated the proper standard of review, and we find no error in its reasoning, or any abuse in its comments on its personal feelings.

Plaintiff next contends that the trial court made numerous factual errors in rendering its decision, thus indicating that the court had not thoroughly reviewed the record. Our review of the record, however, indicates that the trial court was thorough and cautious in reviewing the record both during its initial hearing to consider the Commission's order and at the subsequent hearing to consider plaintiff's motion for reconsideration. Plaintiff's claimed factual errors are either miniscule, such as the misstatements as to dates, or are not factual errors at all.

■■ Plaintiff finally requests that we remand the matter to the Commission with directions to hold hearings in order to establish a "bill of rights" for consumers. We decline to do so, because this would be a usurpation of legislative or administrative functions. See *City of Hurst v. Illinois Commerce Com.* (1983), 120 Ill. App. 3d 354, 458 N.E.2d 568.

■■ We briefly address Illinois Bell's renewal of its motion to dismiss the appeal because of mootness on the ground that General Order 197 has been repealed and replaced by General Order 218. The new order allows Illinois Bell to impose the security deposit requirement when service has been discontinued twice in one year. The threat of termination of plaintiff's service is present under either order, and the case is not moot.

For the reasons stated, the judgment of the circuit court of Cook County upholding the decision of the Illinois Commerce Commission is affirmed.

Judgment affirmed.

McGILLICUDDY and RIZZI, JJ., concur.