ABBOTT LABORATORIES, INC., *et al.*, Petitioners, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents.—A. FINKL AND SONS *et al.*, Petitioners, v. ILLINOIS COMMERCE COMMISSION *et al.*, Respondents.

First District (5th Division)   Nos. 1—96—0265, 1—96—0266 cons.

Opinion filed June 27, 1997.

Eric Robertson and Edward C. Fitzhenry, both of Lueders, Robertson & Konzen, of Granite City, for petitioners.

Kathleen Nolan, of Chicago, for respondent Illinois Commerce Commission.

James Hinchliff, Gerard T. Fox, and Mary Klyasheff, all of Chicago, for respondent North Shore Gas Company.

JUSTICE HOURIHANE delivered the opinion of the court:

In this consolidated appeal, various transportation customers of Peoples Gas Light and Coke Company (Peoples) and North Shore Gas Company (North Shore) appeal from two final orders entered by the

Illinois Commerce Commission (Commission) approving a general rate increase for gas service and other ratemaking adjustments. For the reasons discussed below, we affirm the orders of the Commission.

## BACKGROUND

On December 16, 1994, Peoples and North Shore filed requests with the Commission for a general increase in their gas rates of $41 million and $6.6 million, respectively, and proposed various other changes. The Commission conducted hearings over a six-month period at which the Illinois Industrial Energy Consumers and the Chicago Area Transportation Customer Coalition (petitioners here) participated. Also participating in the proceedings were the Commission's staff, the Citizens Utility Board (CUB), the Illinois Attorney General, the Cook County State's Attorney, and Midcon Gas Services Corp. (Midcon), among others. In two separate orders entered November 8, 1995, the Commission granted Peoples a $30.8 million rate increase and North Shore a $5.5 million rate increase. The Commission denied petitioners' applications for rehearing and this appeal followed. 220 ILCS 5/10—201 (West 1994); 155 Ill. 2d R. 335.

The Commission decided a number of issues common to both proceedings that petitioners challenge on review. First, the Commission approved an unauthorized use penalty of $6 per therm on critical days, and 50 cents per therm on noncritical days. The unauthorized use charge had previously been set at $1 per therm, with no distinction for critical versus noncritical days. Petitioners challenge the statutory authority of the Commission to establish a non-cost-based penalty and assert that the adoption of the higher penalty is not supported by substantial evidence.

Second, the Commission adopted the "average and peak" method for allocating transmission and distribution costs among customer classes, rather than the "coincident peak" method, and rejected the use of a "pressure differential" factor. Petitioners contend that the Commission's decision is not supported by substantial evidence.

Finally, the Commission approved a one-third allowable bank monthly withdrawal restriction for transportation customers during the winter months. Petitioners again assert that the Commission's decision is not supported by substantial evidence.

## ANALYSIS

### I. Unauthorized Use Penalty

The purpose behind an unauthorized use penalty is to minimize unauthorized gas use by encouraging transportation customers to contract for a prudent level of standby service. Large volume

transportation customers, such as petitioners, procure their own gas supply. This customer-owned gas is transported via interstate pipelines to the Peoples and North Shore systems which, in turn, deliver the gas to the customers' premises. When a customer's own gas supply is insufficient to meet its requirements, Peoples and North Shore are obligated to provide company-owned gas to the extent of the standby service for which the customer has contracted. Transportation customers that take gas in excess of their contractual limit are subject to an unauthorized use charge. Provision of gas service beyond a customer's contractual limits requires the utility companies to use additional "no-notice" services, *i.e.*, contracts with other pipelines to provide gas up to specified entitlements without incurring penalties.

By its orders of November 8, 1995, the Commission approved an unauthorized use charge of $6 per therm on critical days[1] and 50 cents per therm on noncritical days, replacing the then prevailing unauthorized use charge of $1 per therm. The Commission's orders state that "the unauthorized use charge is a penalty and, thus, should not be cost-based." Petitioners argue that the Commission lacks the jurisdiction or authority under the Act to create and impose such a penalty and thus, under well-settled law, its orders are void. See *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 244, 555 N.E.2d 693 (1989). The Commission counters that petitioners waived this issue on appeal by failing to raise it in their petitions for rehearing before the Commission (see 220 ILCS 5/10—113 (West 1994)) and that, in any event, the unauthorized use penalty was a valid exercise of the Commission's authority.

■ Section 10—201(e) of the Public Utilities Act (Act) (220 ILCS 5/1—101 *et seq.* (West 1994 and Supp. 1995)) sets forth the powers and duties of a reviewing court and specifically provides that the court shall reverse an order of the Commission if, among other things, the "order or decision is without the jurisdiction of the Commission." 220 ILCS 5/10—201(e)(iv)(B) (West 1994). The "jurisdiction" of the Commission includes three aspects:

"(1) personal jurisdiction—the agency's authority over the parties and intervenors involved in the proceedings, (2) subject matter jurisdiction—the agency's power 'to hear and determine causes of

---

[1] The utilities may declare a "critical" day when certain circumstances occur or are expected to occur, such as when it is anticipated that requirements will exceed supply. Petitioners do not challenge the criteria for declaration of a critical day.

the general class of cases to which the particular case belongs' [citation], and (3) an agency's scope of authority under the statutes." *Business & Professional People v. Illinois Commerce Comm'n*, 136 Ill. 2d at 243.

Here, it is the third aspect of the Commission's jurisdiction which petitioners challenge.

■ Significantly, section 10—113 of the Act expressly limits the scope of this court's review to those issues raised in the petition for rehearing. 220 ILCS 5/10—113 (West 1994). Generalized contentions that a decision of the Commission is unlawful will not preserve particular issues for review. Rather, section 10—113 of the Act requires express mention of grounds for review in the petition for rehearing. *Citizens Utility Board v. Illinois Commerce Comm'n*, 166 Ill. 2d 111, 136, 651 N.E.2d 1089 (1995). Thus, where a petitioner, in its application for rehearing, asserts only that the Commission erred as a matter of law, but does not expressly challenge the Commission's decision as beyond its statutory authority, such argument will be deemed waived for purposes of review. *Citizens Utility Board v. Illinois Commerce Comm'n*, 166 Ill. 2d at 134-36.

■ Here, the petitions for rehearing before the Commission raised numerous matters but did not specifically raise the issue of the Commission's statutory authority to impose an unauthorized use penalty. Petitioners' generalized contentions that the Commission's decision is "contra to the law" is plainly insufficient to preserve the issue for review. Accordingly, petitioners waived any argument that the Commission's adoption of the penalty was outside the scope of its authority. See *Citizens Utility Board v. Illinois Commerce Comm'n*, 166 Ill. 2d at 134-36.

Even if not waived, the Commission's decision to establish a non-cost-based unauthorized use penalty is a valid exercise of its authority. An unauthorized use charge is not a new concept among public utilities in this state. The Commission has approved unauthorized use charges on a utility-specific basis since prior to 1984. See *Re Peoples Gas Light & Coke Co.*, 63 Pub. Util. Rep. 4th 304 (August 30, 1984) (approving unopposed increase in unauthorized use charge from 96.92 cents per therm to $1 per therm). Further, since at least 1989, the Commission has approved unauthorized use charges that are not tied to strict cost-based pricing concepts, instead setting charges at a level sufficient to encourage customers to comply with their designated backup service levels. See *Re Northern Illinois Gas Co.*, 103 Pub. Util. Rep. 4th 290 (June 21, 1989) (approving non-cost-based $1-per-therm unauthorized use charge); *Re Comprehensive Statewide Plan for Natural Gas Utilities*, 117 Pub. Util. Rep. 4th 16 (October 3, 1990) (adopting statewide plan for natural gas utilities providing, *inter alia*, for individual, utility-specific proceedings to

consider mandatory backup provisions and/or effective penalties to prevent the unauthorized use of gas by transportation customers). Although the past practice of the Commission approving unauthorized use penalties is not dispositive of whether the Commission has such authority under the Act, it is noteworthy that the decision of the Commission which is challenged here does not represent a radical departure from prior agency action.

■ We also observe that although this court has never been faced with a direct challenge to the Commission's authority to impose such a penalty, this court has implicitly recognized the Commission's authority to do so. See *Governor's Office of Consumer Services v. Illinois Commerce Comm'n*, 242 Ill. App. 3d 172, 607 N.E.2d 1322 (1992). As explained below, we now explicitly recognize the Commission's authority to approve a non-cost-based unauthorized use charge.

The Commission possesses plenary power under the Act with respect to the supervision of public utilities, including the power to establish reasonable rates and charges for service. *People v. City of Chicago*, 349 Ill. 304, 346, 182 N.E.2d 419 (1932); 220 ILCS 5/4—101, 9—250 (West 1994). "Rate" is defined under the Act as:

> "[E]very individual or joint rate, fare, toll, charge, rental or other compensation of any public utility or any two or more such individual or joint rates, fares, tolls, charges, rental or other compensation of any public utility or any schedule or tariff thereof, and any rule, regulation, charge, practice or contract relating thereto." 220 ILCS 5/3—116 (West 1994).

Our supreme court has held that the "statutory authority to approve rate schedules embraces more than the authority to approve rates fixed in terms of dollars and cents." *City of Chicago v. Illinois Commerce Comm'n*, 13 Ill. 2d 607, 611, 150 N.E.2d 776 (1958). Thus, "rate" has been broadly construed by Illinois courts to include an automatic adjustment clause[2] (*City of Chicago v. Illinois Commerce Comm'n*, 13 Ill. 2d 607) and "refunds which affect the ultimate price paid by ratepayers" (*Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 203 Ill. App. 3d 424, 437, 561 N.E.2d 426 (1990)). Similarly, although not expressly set forth in the Act, the Commission's ratemaking authority also includes credit regulation. Accordingly, the Commission has the authority to require cash security deposits for customers who have made late payments. *Moenning v. Illinois Bell Telephone Co.*, 139 Ill. App. 3d 521, 525, 487 N.E.2d 980 (1985).

---

[2]An automatic adjustment clause is a set formula by which the price of natural gas to the ultimate consumer is fixed by inserting into the formula the wholesale price of natural gas.

Notwithstanding the broad powers of the Commission, petitioners contend that there is no express authorization in the statute for imposing such a penalty and that remedial civil sanctions may only be imposed by a regulatory agency where the agency's enabling statute so authorizes. See *Larkin v. Hartigan*, 250 Ill. App. 3d 969, 976, 620 N.E.2d 598 (1993). While petitioners are correct that there is no express authorization in the Act, it is a well-established rule that the express grant of authority to an administrative agency also includes the authority to do what is reasonably necessary to accomplish the legislature's objective. *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 427, 519 N.E.2d 459 (1988). See also *Moenning v. Illinois Bell Telephone Co.*, 139 Ill. App. 3d at 525 (ICC has broad discretion to regulate the rate policies of public utilities). Thus, in *Peoples Gas, Light & Coke Co. v. Illinois Commerce Comm'n*, 175 Ill. App. 3d 39, 529 N.E.2d 671 (1988), this court held that the Commission was not limited to any set of methods to achieve the legislative objective of securing meter accuracy and upheld a rule imposing a so-called penalty against a gas company for meter failure. This court stated:

> "While the legislature provided many explicit sanctions which may be employed by the Commission, the legislature expressed no intent to limit the Commission to the numerated methods of enforcement. We do not find the legislature implied in the Act any intent to limit the Commission to any set of specific procedures. Rather, we believe the legislature implicitly authorized the Commission to formulate rules necessary to secure meter accuracy, a goal specifically mentioned by the legislature." *Peoples Gas, Light & Coke Co. v. Illinois Commerce Comm'n*, 175 Ill. App. 3d at 52.

The provision of adequate, reliable and efficient energy services, also specifically mentioned by the legislature (see 220 ILCS 5/1—102 (West Supp. 1995)), is no less an important objective than meter accuracy. Such objective cannot be realized under circumstances that encourage transportation customers to take gas to which they are not contractually entitled, thus forcing public utilities to draw on additional no-notice services at additional costs. The operational integrity of the public utility systems should not be compromised in this fashion. Rather, transportation customers should be encouraged to engage in efficient operational planning, including the nomination of appropriate levels of standby service. We believe an unauthorized use charge that is not specifically tied to the public utilities' costs for securing additional no-notice services is reasonably related to this purpose. Accordingly, although not expressly provided under the Act, we find that the Commission's approval of a non-cost-based penalty

was within its broad ratemaking authority and that the Commission appropriately exercised its discretion to formulate reasonable methods of achieving stated legislative objectives.

■ Petitioners assert that, even if the Commission has the authority to approve an unauthorized use penalty, its approval of an increase in the penalty to $6 per therm is not supported by "substantial evidence." See 220 ILCS 5/10—201(e)(iv)(A) (West 1994). On review of an order of the Commission, "findings and conclusions of the Commission *** shall be held prima facie to be true" and "rules, regulations, orders or decisions of the Commission shall be held to be prima facie reasonable." 220 ILCS 5/10—201(d) (West 1994). The burden of proof as to all issues raised on appeal is on the appellant. 220 ILCS 5/10—201(d) (West 1994).

An order of the Commission shall be reversed if it is not supported by substantial evidence. 220 ILCS 5/10—201(e)(iv)(A) (West 1994). "Substantial evidence" has been defined as:

> "[E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 268 Ill. App. 3d 471, 479, 644 N.E.2d 817 (1994).

In determining whether substantial evidence exists, this court must not conduct its own investigation, nor should it substitute its judgment for that of the Commission. *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 268 Ill. App. 3d at 479.

The Commission was presented with various proposals regarding the unauthorized use charge and heard testimony from numerous witnesses. Peoples and North Shore proposed an increase in the critical-day penalty to $10 per therm, which was later reduced to $6 per therm. MidCon proposed a two-tier approach: $1 per therm for the first offense and, after 24 hours' written notice, $10 per therm. Petitioners recommended a charge equal to the greater of $1 per therm or the ratable share of any penalties actually incurred by Peoples and North Shore.

The evidence established that, in fiscal 1994, there were draws of unauthorized gas from the North Shore system in excess of 880,000 therms. On the Peoples system, unauthorized takes more than tripled from fiscal 1993 to fiscal 1994, with no significant disparity in winter temperatures. According to a MidCon representative, many transportation customers have elected reduced or zero standby service, using North Shore and Peoples as cheap back-stop services.

Sharon Donofrio, superintendent of the rates departments at Peoples and North Shore, testified that the current charge is too low

to provide an appropriate disincentive to unauthorized gas use. She testified that, absent such a disincentive, transportation customers may plan on using unauthorized gas to meet their peak demand. Although the charge should reflect the costs associated with no-notice services, she stated that the charge should not be designed on a cost basis.

Commission staff witness Richard Zuraski advocated a compromise between a cost-based approach and a penalty approach. He recommended a $6-per-therm critical-day charge. Peoples and North Shore concurred.

Petitioners focus on evidence that Peoples and North Shore have never terminated a transportation customer because its unauthorized gas use endangered the system, although under their tariffs, Peoples and North Shore have the right to do so. They also point to a lack of evidence that transportation customers will plan to rely on unauthorized use gas, rather than purchase standby service, unless the charge is raised substantially. They further argue that there is no evidence supporting an increase of this magnitude. We disagree.

■ A party who challenges a decision of the Commission on the basis that it is not supported by substantial evidence must do more than show that the evidence supports a different conclusion. It must demonstrate that the opposite conclusion is clearly evident. *Continental Mobile Telephone Co. v. Illinois Commerce Comm'n*, 269 Ill. App. 3d 161, 171, 645 N.E.2d 516 (1994). Petitioners have failed to cite to any evidence that clearly supports the conclusion either that no increase was necessary or that any increase should necessarily be set at an amount less than $6 per therm. Rather, the evidence demonstrates that, notwithstanding the existing $1-per-therm penalty, there continues to be substantial draws of unauthorized gas. If transportation customers wish to take gas to which they have no contractual entitlement, then they should properly pay for such service. A $6-per-therm critical-day charge reflects the low end of the utilities' asserted yearly costs associated with no-notice services. We find nothing inconsistent about the Commission's adoption of a penalty which, while not cost-based, nonetheless reflects the Commission's awareness of certain cost factors. We are mindful that the ultimate purpose of the penalty is to discourage unauthorized gas use so that the reliability of the system is preserved. Accordingly, we cannot say that the $6-per-therm critical-day penalty is not supported by substantial evidence.[3]

■ Petitioners further maintain that the Commission's approval

[3] Petitioners do not challenge the Commission's approval of a 50-cent-per-

of a $6-per-therm penalty represents a drastic departure from past agency decisions approving a $1-per-therm penalty for North Shore and Peoples and that the Commission's decision is, therefore, entitled to less deference on review. We note first that the Commission is not subject to *res judicata. Governor's Office of Consumer Services v. Illinois Commerce Comm'n*, 242 Ill. App. 3d at 189. Thus, prior agency decisions approving a lesser charge are not binding on the Commission in this case. Further, only where the Commission departs from its "usual rules of decision to reach a different, unexplained result in a single case," thus depriving a party of equal treatment before the Commission, will its decision be entitled to less deference on review. *Central Illinois Public Service Co. v. Illinois Commerce Comm'n*, 268 Ill. App. 3d at 479. See also *United Cities Gas Co. v. Illinois Commerce Comm'n*, 225 Ill. App. 3d 771, 782, 589 N.E.2d 581 (1992) (Commission may not depart from prior practices and customs in interpreting its procedural rules, especially where there may have been detrimental reliance on such prior agency interpretations).

The Commission's decision here is not based on a new and different interpretation of a prior rule but, rather, is based on the Commission's long-standing policy of deterring transportation customers from taking unauthorized gas through the imposition of an appropriate charge. All that has changed is the amount of the charge. Accordingly, we view the Commission's November 8, 1995, orders as entirely consistent with its prior decisions.

■ Petitioners also contend that the Commission failed to take into account the impact the penalty would have on transportation customers in violation of section 9—201(c) of the Act. They argue that the only impact evidence offered was through petitioners' witness, Dr. Alan Rosenberg, but that the Commission's order does not discuss his testimony. Dr. Rosenberg testified that under the utilities' original $10-per-therm critical-day penalty, and "absent customers purchasing some form of protection *** a typical transportation customer could conceivably incur enough penalties *in just seven days*, to *double* its total annual gas budget," and that "the penalty in a single month could put a customer in financial difficulty." (Emphasis in original.)

Section 9—201 provides that "[i]f the Commission enters upon a hearing concerning the propriety of any proposed rate or other charge, classification, contract, practice, rule or regulation, the Commission shall establish the rates or other charges *** which it shall

---

therm non-critical-day penalty, which represents a 50% reduction from the prior penalty.

find to be just and reasonable." 220 ILCS 5/9—201(c) (West 1994). A determination of what is "just and reasonable" involves a balancing by the Commission of the interests of the utilities' stockholders and the utilities' consumers. *Citizens Utility Board v. Illinois Commerce Comm'n*, 276 Ill. App. 3d 730, 736-37, 658 N.E.2d 1194 (1995). "The Commission cannot fulfil its statutory duty to balance the competing interests of stockholders and ratepayers without taking into account the interests of ratepayers by considering the impact of proposed rates on ratepayers." *Citizens Utility Board v. Illinois Commerce Comm'n*, 276 Ill. App. 3d at 737.

The fact that the Commission's orders do not expressly mention Dr. Rosenberg's testimony does not mean that the Commission did not consider such evidence. Under the Act, the Commission is required to "make and render findings concerning the subject matter inquired into and enter its order based thereon." 220 ILCS 5/10—110 (West 1994). The Commission is not required to make particular findings as to each evidentiary fact or claim, nor is the Commission required to disclose its mental operations. *Lefton Iron & Metal Co. v. Illinois Commerce Comm'n*, 174 Ill. App. 3d 1049, 1055-56, 529 N.E.2d 610 (1988). The Commission need only set forth the facts which form the basis for the order so that informed review is not hindered. *Lefton Iron & Metal Co. v. Illinois Commerce Comm'n*, 174 Ill. App. 3d at 1055.

The record discloses that the Commission considered at length the evidence offered as to various existing and proposed methods for avoiding the unauthorized use charges, and reasonably determined that the options offered by Peoples and North Shore provided sufficient opportunity for customers who prudently manage their gas accounts to avoid such charges. While the Commission's orders do not specifically refer to Dr. Rosenberg's testimony, we believe the Commission adequately considered the impact the proposed penalty would have on transportation customers and that the Commission fulfilled its duty under section 9—201 of the Act.

Based on the foregoing, that part of the Commission's order approving an unauthorized use penalty of $6 per therm on critical days and 50 cents per therm on noncritical days is affirmed.

## II. Transmission and Distribution Costs

Petitioners next contend that the Commission's adoption of the "average and peak" (A&P) method for allocating transmission and distribution (T&D) investment among customers, as opposed to the "coincident peak" (CP) method proposed by petitioners, is not supported by substantial evidence. Under the CP method, T&D costs are allocated based on the demand for gas of each customer class at the

time of design day system peak, *i.e.*, the one day of the year when the public utility experienced the highest usage for all classes. The A&P method allocates T&D costs based on both peak demand and average demand.

The Commission rejected the notion that all T&D costs are peak related and adopted the A&P method, weighting the average and peak portions at 74.44% and 25.56%, respectively. This was the allocation proposed by staff. CUB, the Illinois Attorney General, and the Cook County State's Attorney also advocated adoption of the A&P method, although weighting average and peak demand differently.

■ We disagree with petitioners that the Commission's findings are insufficient to permit informed judicial review. The Commission's orders reflect careful consideration of the issues and the ample testimony received on the appropriateness of the two approaches. The Commission's findings and basis for its decision are sufficiently specific and do not impede review by this court. See *Lefton Iron & Metal Co. v. Illinois Commerce Comm'n*, 174 Ill. App. 3d at 1055-56.

We also find that the Commission's adoption of the A&P method is supported by substantial evidence. There was testimony from a number of sources that the CP method reflects too narrow an approach to cost allocation by not taking into account the range of non-peak-related factors, reflected in the A&P approach, which determine T&D investment. While the Commission also heard contrary testimony, we cannot say that the opposite conclusion is clearly evident. See *Continental Mobile Telephone Co. v. Illinois Commerce Comm'n*, 269 Ill. App. 3d at 171. We note, too, that the Commission's findings are entitled to considerable deference when, as here, they involve the assessment of highly technical data. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 203 Ill. App. 3d 424, 442, 561 N.E.2d 426 (1990).

■ Further, we disagree with petitioners' contention that the Commission's rejection of a "pressure differential factor" was not supported by substantial evidence. The use of a pressure differential factor is intended to adjust T&D costs to reflect the fact that large volume customers take gas only from high pressure mains and therefore should not be assessed those costs associated with the intermediate and low pressure mains which serve other classes of customers.

As to this issue, the Commission concurred with the view expressed by CUB witness Steven Ruback. Ruback is an engineer, specializing in public utility issues, with 15 years' experience as a consultant to municipal utilities and governmental agencies. He testified that for distribution purposes the system may operate as

three separate systems at three different pressure levels but that for economic purposes the system is an integrated web. He further testified that the larger mains would not exist but for the prior improvements made possible because of revenues from all customer classes and that new main extensions benefit from the existing service regardless of whether it was installed for large or small customers. He opined that "[i]t would be a complete irony for small customers to be allocated more costs when their combined load may have justified the large mains from which the large customers take service." He concluded, therefore, that a pressure differential adjustment was inappropriate when allocating T&D investment.

The Commission also heard from petitioners' witness, John Mallinckrodt, an engineer experienced in pipeline design, construction and operations, who has held various positions with Peoples. Mallinckrodt testified that the Peoples and North Shore systems are designed and built to operate at three distinct pressure levels and that customers who take off the high pressure mains cannot and do not utilize the intermediate and low pressure mains. Accordingly, a pressure differential adjustment reflects the operational reality of the Peoples and North Shore systems. Staff witness Lazare also supported such an adjustment.

As previously stated, when reviewing an order of the Commission, the standard is not whether the evidence could support another conclusion, but whether the opposite conclusion is clearly evident. *Continental Mobile Telephone Co. v. Illinois Commerce Comm'n*, 269 Ill. App. 3d at 171. Moreover, it is not the function of this court to reweigh the evidence. *Illinois Power Co. v. Illinois Commerce Comm'n*, 254 Ill. App. 3d 293, 307, 626 N.E.2d 713 (1993). Accordingly, we find that the Commission's rejection of a pressure differential factor was not error.

### III. Allowable Bank

■ Petitioners' final contention is that the Commission's decision to restrict winter period withdrawals from a customer's allowable bank is not supported by substantial evidence. An "allowable bank" is a type of gas storage account in which deliveries of customer-owned gas in excess of customer usage are accounted. When deliveries of customer-owned gas are insufficient to meet a transportation customer's usage, the customer may, within certain limitations, draw upon the previously delivered gas that is accounted for in its allowable bank. The withdrawal rights of the customer must not exceed the utilities' ability to draw on its storage services to meet the demand.

The restriction approved by the Commission is the lesser of actual

inventory or one-third of the customer's allowable bank. The Commission determined that this restriction mirrors the restrictions on the services the utilities use to support the allowable bank. The Commission further found that the historical data petitioners presented in opposition to any restriction does not support the conclusion that the one-third limit would never be breached absent a tariff restriction. We find the Commission's decision is based on substantial evidence and should stand.

## CONCLUSION

For the reasons stated, we affirm the decision of the Commission in all respects.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.