No. 2--97--0657

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

COMMONWEALTH EDISON COMPANY, ) Appeal from an Order of the

) Illinois Commerce Commission.

Petitioner, )

) 

v. ) ICC Docket No. 96--0229

)

ILLINOIS COMMERCE COMMISSION, )

)

Respondent ) 

)

(Central Illinois Light Company, )

Northern Illinois Coalition for )

Fair Competition, and Cook )

County, Intervenors). )

)

________________ _________________________________________________________________

JUSTICE DOYLE delivered the opinion of the court:

Petitioner, Commonwealth Edison Company (ComEd), appeals directly to this court from an order of respondent, the Illinois Commerce Commission (Commission).  The order denied ComEd’s petition to the Commission for consent and approval to provide energy support services to energy users.  ComEd contends that the order was erroneous because the Commission improperly (1) applied a required balancing test; (2) based its decision on a section of the Public Utilities Act (220 ILCS 5/1-101 
et seq.
 (West 1996)) that  had no bearing on the proceedings; and (3) relied on two central factual findings that were not supported by substantial evidence.

On April 1, 1996, ComEd filed a petition with the Commission seeking the Commission’s consent and approval pursuant to section 7--102 of the Public Utilities Act (Act) (220 ILCS 5/7--102 (West 1996)) to provide energy support services to energy users.  The petition and a later amended petition described energy support services as including the following: the furnishing, design, engineering, construction, operation, analysis, and management of electrical power equipment, energy systems, and energy conversion systems; the selection, evaluation, acquisition, installation, and testing of equipment used in such systems, including energy efficiency and conservation equipment; and the auditing and monitoring of such energy systems.

ComEd’s amended petition stated that the business of providing energy support services typically involved a number of components, including evaluating an energy user’s need for energy support services; developing a proposal describing the work to be completed  in implementing the energy support services and the estimated cost and benefit to the user; purchasing and financing the proposed energy support services (including possible financing arranged by ComEd); providing the energy support services, possibly involving ComEd contracting with third-party service providers who would perform portions of the work; and, in some cases, guaranteeing part of the user’s projected energy cost savings from the implementation of the energy support services.

On October 16, 1996, and October 24, 1996, a hearing was conducted regarding ComEd’s petition.  Both ComEd and the staff of the Commission (Staff) appeared at the hearing and presented evidence.  The Central Illinois Light Company (CILCO) and the Northern Illinois Coalition for Fair Competition (NICFC) also appeared at the hearing and were allowed to intervene.  Neither CILCO nor NICFC presented evidence at the hearing.

ComEd presented the testimony of several witnesses.  ComEd’s  testimony included the following: ComEd filed the petition because it perceived a need to provide energy support services to energy users who had requested such services; ComEd is facing competition on many fronts and it is therefore imperative that it be allowed to provide energy support services so that it can be as competitive as possible; ComEd’s entry into the energy support services market would constitute diversification for the company and would decrease its overall business risks by better enabling it to retain customers that it might otherwise lose to competitors that are able to provide energy support services; and it is important that ComEd be allowed to provide energy support services itself because customers want “one-stop” shopping that would allow them to obtain both energy and energy support services from a single provider.

 ComEd also presented testimony regarding the benefits that would result if it were allowed to provide energy support services.  This testimony was that ComEd’s provision of energy support services would result in the following benefits: (1) benefits to all ComEd customers through the retention of customers by meeting customers' needs; (2) promotion of the public interest in the safe and efficient operation of electrical equipment; (3) establishment of reliable energy supply and support services for customers; and (4) enhancement of the skills of ComEd personnel who provide such services.  

Staff also presented testimony.  Two Staff witnesses  recommended that the Commission deny ComEd’s petition.  One of these Staff witnesses was Scott Rungren, a senior financial analyst in the finance department of the public utilities division of the Commission.  Rungren based his recommendation on his opinion that allowing ComEd to provide energy support services would impact ComEd’s risk and cost of capital in an unquantified way, creating the potential for a violation of section 9--230 of the Act (220 ILCS 5/9--230 (West 1996)) in a future rate proceeding.  Rungren testified that if a nonregulated subsidiary of Unicom, ComEd’s parent holding company,  provided energy support services instead of ComEd, there would be no need to be concerned about the Commission’s ability to enforce section 9--230 in a future rate proceeding.  In Rungren’s view, any risk associated with the provision of energy support services would not be reflected in ComEd’s cost of capital if a Unicom subsidiary provided energy support services instead of ComEd.

The other Staff witness who recommended that the Commission deny the petition was Eric P. Schlaf, a senior economist with the Commission’s office of policy and planning.  Schlaf testified that it was not necessary for ComEd itself to provide energy support services because an unregulated subsidiary of Unicom could provide energy support services and accomplish each of the benefits that ComEd asserted would result from its provision of energy support services.  Schlaf also testified that the approval of the petition would allow ComEd to take unfair advantage of its competitors in the energy support services market by exploiting a monopoly that ComEd has with respect to the transmission of energy in its service area. 

ComEd presented testimony that was intended to rebut the testimony of Rungren and Schlaf.  This testimony included the following:  allowing ComEd to provide energy support services would decrease, not increase, ComEd’s business risks because not offering energy support services would tend to increase the risk that ComEd would lose customers to other providers that are able to provide energy support services; because ComEd’s entry into the energy support services business would not increase its business risk, it would not increase ComEd’s cost of capital; the public interest would best be served if ComEd, rather than an unregulated Unicom subsidiary, provided energy support services because customers benefit most from “one-stop” shopping; the provision of energy support services by an unregulated Unicom subsidiary would place ComEd at a competitive disadvantage to other suppliers of energy support services; ComEd would not and could not take advantage of competitors through any monopoly it had in the transmission of energy; and, if the Commission were to deny ComEd’s petition, ComEd’s core electric business would be exposed to greater risk.

On January 16, 1997, the hearing examiner issued a proposed order.  The proposed order included findings that ComEd’s plan to provide energy support services was reasonable and would promote the public interest and convenience.  The proposed order recommended approval of ComEd’s amended petition.

On March 31, 1997, the Commission issued its final order (the  order).  The order denied ComEd’s petition after finding that “ComEd’s proposal to provide energy support services will not promote the public convenience.” 

ComEd subsequently filed a petition for rehearing, which was denied.  ComEd’s timely appeal followed.

A direct appeal from an order of the Commission is governed by section 10--201 of the Act (220 ILCS 5/10--201(a) (West 1996)).  Section 10--201 provides that the appellate court shall reverse a commission order if the court determines, 
inter alia
, that the order was not supported by substantial evidence, or the order was in violation of the state or federal constitutions or laws.  220 ILCS 5/10--201(e)(iv)(A), (C) (West 1996).

On appeal, ComEd first contends that the Commission committed legal error by improperly applying a required balancing test when it decided to deny ComEd’s petition.  The parties agree that section 7--102 of the Act governs ComEd’s petition.

Section 7--102 requires a public utility to seek formal approval from the Commission before the utility may, 
inter alia
, make a contractual guarantee, engage in a nonutility business (such as the provision of energy support services), or provide financing to third parties.  See 220 ILCS 5/7--102(f),(g),(h) (West 1996).  Section 7--102 directs the Commission, if it considers it necessary, to conduct a hearing regarding the utility’s petition. 

Section 7--102 also directs the commission to apply a “public convenience” standard.  In this regard, section 7--102 provides that “if the Commission is satisfied that such petition should reasonably be granted, 
and that the public will be convenienced thereby
, the Commission shall make such order in the premises as it may deem proper and as the circumstances may require.”  (Emphasis added.) 220 ILCS 5/7--102 (West 1996).

The Commission has broad discretion to decide whether a petition should be approved under the public convenience standard.  
Illinois Power Co. v. Illinois Commerce Comm’n
, 111 Ill. 2d 505, 511 (1986).   In this case, the Commission decided that it would apply a balancing test to determine whether the public convenience standard had been met when it stated that in applying the public convenience standard “approval of a transaction should be granted if the evidence indicates that the benefits to rate payers are reasonably likely to exceed the costs or harms to rate payers.”

ComEd agrees that the Commission should determine whether the public convenience standard 
has been met by applying the balancing test.  However, ComEd contends that the Commission misapplied the balancing test by considering only the costs related to the petition and completely ignoring the related benefits.  ComEd maintains that it presented uncontroverted evidence of real and substantial benefits which would result from its provision of energy support services to energy users but that the Commission  ignored these benefits and therefore did not perform the required balancing between benefits and costs.  ComEd argues that the Commission’s failure to perform the required balancing test violated section 7--102.  In ComEd’s view, this violation of section 7--102 warrants reversal of the Commission’s order and remand to the Commission for the purpose of applying the required balancing test.

We agree with ComEd that the Commission’s order does not explicitly balance the individual benefits and costs which the parties asserted would result from ComEd’s provision of energy support services.  However, the order does contain a broad statement which indicates that the Commission did apply the balancing test before deciding to deny ComEd’s petition.  This broad statement, which immediately followed the definition of the public convenience standard in the order, was that the “Commission is applying the [balancing test] in this case and we find that this petition is not in the public interest and should be denied.”

ComEd takes the position that this statement is insufficient to satisfy section 7--102 because it merely indicates that the Commission 
says
 it applied the balancing test, but does not show that the Commission actually applied the test.  Perhaps ideally the Commission would provide an explicit explanation of how it balanced the benefits and costs when it applies the balancing test to determine whether the section 7--102 public convenience standard has been met.  However, the Commission’s failure to provide such an explanation, by itself, is not a sufficient reason to reverse the order because the Commission is not required to make particular findings as to each evidentiary fact or claim.  
United Cities Gas Co. v. Illinois Commerce Comm’n
, 47 Ill. 2d 498, 501 (1970).  Consequently, we cannot say that the Commission violated section 7--102 merely because it did not specifically discuss each benefit and cost when it applied the balancing test.

In addition to its statement in the order that it was applying the balancing test, there are other grounds for concluding that the Commission applied the balancing test.  One of these grounds is based on another statement in the order which was related to a lesser test to determine whether the public convenience standard had been met.  This statement was that ComEd did not even meet a lesser public convenience standard.  Under the lesser standard, the Commission could have approved the petition if, as a result of ComEd’s provision of energy support services, “rate payers were left indifferent.”  The order states that ComEd did not meet this lesser test.  This statement is another way of saying that the benefits not only failed to exceed the claimed costs but that the benefits did not even equal the costs.  This statement therefore indicates that the Commission weighed the benefits and costs and determined that the benefits were outweighed by the costs.

Another basis for concluding that the Commission applied the balancing test is found in the Commission’s reasoning in the order.  Although this reasoning was primarily couched in terms of the costs  and harms that the Commission determined were likely to result from ComEd’s provision of energy support services, the reasoning also shows that the Commission, at least implicitly, weighed the benefits that ComEd asserted would result against the costs.  

For example, ComEd asserted that one of the benefits that would result from its provision of energy support services to energy users would be reduced costs to these users and a consequent reduction of costs to all ComEd customers.  However, the Commission concluded that allowing ComEd to enter the energy support services market with its monopolist’s ability to become the dominant energy support service provider would eventually result in users of energy support services paying noncompetitive, 
i.e.
, higher, prices than if ComEd did not enter the energy support services market.  

In its reasoning, the Commission also determined that a Unicom subsidiary could freely enter the energy support services market and could employ ComEd personnel to provide energy support services.  Thus, Unicom could provide most, if not all, of the other benefits which ComEd asserted would result from its provision of energy support services.  These benefits include promoting the public interest in the safe and efficient operation of electrical equipment, the establishment of reliable energy supply and support services for customers, and the enhancement of the skills of ComEd personnel. 

The Commission concluded that Unicom could provide these benefits without the costs to ratepayers noted above.  Consequently, the Commission implicitly concluded that the benefits that ComEd asserted would result from its provision of energy support services did not outweigh the costs that would result.

For all these reasons, we conclude that the Commission  applied the balancing test when it determined that the public convenience standard had not been met.  Accordingly, reversal of the Commission’s order on the ground that it failed to apply the  balancing test is not warranted.

ComEd next contends that the Commission committed reversible legal error when it relied on and applied section 9--230 of the Act in deciding to deny the petition.  Section 9--230 provides:

“In determining a reasonable rate of return upon investment for any public utility in any proceeding to establish rates or charges, the Commission shall not include any incremental risk or increased cost of capital which is the direct or indirect result of the public utility’s affiliation with unregulated or nonutility companies.”  220 ILCS 5/9--230  (West 1996).

ComEd contends that the Commission relied on section 9--230 in reaching its decision and that the Commission’s reliance on section 9--230 was erroneous because section 9--230 does not authorize the Commission to reject the utility’s petition for approval of an initiative under section 7--102.  ComEd further contends that the Commission did not offer any other authority that supports its reliance on section 9--230.  

The Commission responds by attempting to minimize the extent that it relied on section 9--230 in reaching its decision.  The Commission implies that because its reliance on section 9--230 was minimal, any error in its reliance on section 9--230 was not reversible because there were other grounds sufficient to support its decision.  

In resolving this issue, we will initially determine whether other grounds for the Commission’s decision were sufficient to support the decision.  We believe that if the record shows sufficient other grounds that support the Commission’s decision, then it is not necessary to determine whether the Commission’s reliance on section 9--230 was erroneous.  See 
Gernand v. Illinois Commerce Comm'n
, 286 Ill. App. 3d 934, 943 (1997) (reviewing court in administrative review may search record for basis to affirm, regardless of whether that basis was relied on in order being reviewed).

As to the other grounds, we agree with the Commission that the harms which the Commission determined would result from ComEd’s entry into the energy support services market due to ComEd’s monopolist’s advantage, coupled with the Commission’s determination that an unregulated Unicom subsidiary could provide the energy support services which ComEd seeks to provide, were sufficient for the Commission to determine that ComEd failed to meet the section 7--102 public convenience standard.  Moreover, it is readily apparent that the Commission relied on these grounds when it determined that ComEd’s petition did not satisfy the public convenience standard.  This is obvious from several statements in the order, including the following:

“Permitting ComEd to enter the energy services market with a monopolist’s advantage over an important element of potential services, remotely generated energy, in that market will not convenience the public.  In fact, 
the public will be harmed by such permission
. [(Emphasis added.)]

* * * 

Denying ComEd’s petition will not exclude Unicom from the energy services market.  As an unregulated entity, Unicom may enter the energy services market at its pleasure.”

For these reasons, we conclude that the Commission would have decided to deny ComEd’s petition even if it had not relied on section 9--230.  Accordingly, it is not necessary for us to determine whether it was improper for the Commission to rely on section 9--230 in reaching its decision to deny the petition.  See 
Produce Terminal Corp. v. Interstate Commerce Comm’n
, 414 Ill. 582, 597 (1953) (reviewing court may disregard in an order reasoning, findings, or recitals  that are not essential to the validity of the order).

ComEd next contends that the order should be reversed because the Commission made two essential factual findings which were not supported by substantial evidence.  ComEd asserts that the erroneous factual findings were (1) the Commission’s finding that ComEd’s provision of energy support services would result in unquantified incremental risks to ComEd’s cost of capital and  would increase the difficulty of the Commission’s tasks pursuant to section 9--230 of the Act in a future rate case; and (2) the Commission’s finding that ComEd had a monopolist’s advantage that it would unfairly exploit if it were allowed to provide energy support services to energy users.

The first claimed factual error was the basis for the Commission’s reliance on section 9--230.  We have previously determined that it is not necessary for us to decide whether the Commission erred in relying on section 9--230.  Therefore, it is not necessary for us to determine whether the record contains substantial evidence supporting the finding that ComEd’s provision of energy support services would result in unquantified incremental risks to ComEd’s cost of capital.

We turn then to ComEd’s contention that there is no substantial evidence in the record to support the Commission’s finding regarding ComEd’s purported monopolist’s advantage and ComEd’s likely exploitation of any such advantage.  ComEd asserts that the only evidence in the record to even suggest that it could have an advantage over competitors if it were allowed to provide energy support services was Schlaf’s testimony.  ComEd acknowledges that Schlaf testified that ComEd’s control of its transmission system would give ComEd an advantage over its competitors in the energy support services market because ComEd could generate electricity remotely to sell to users while ComEd’s competitors could provide electricity only by generating it on the user’s site.  However, ComEd asserts that Schlaf did not explain how ComEd’s ability to sell remotely generated electricity would allow it to monopolize the energy support services market.  ComEd argues that the overwhelming evidence in the record shows that it would not have any advantage in the unregulated energy support services market, as a monopolist or otherwise.

The Act provides that the Commission’s factual findings and conclusions are “held 
prima facie
 to be true and as found by the Commission.”  220 ILCS 5/10--201(d) (West 1996).  A reviewing court should therefore affirm the Commission’s findings of fact if the findings are supported by substantial evidence in the record.  
People ex rel. Hartigan v. Illinois Commerce Comm’n
, 148 Ill. 2d 348, 381 (1992).

For purposes of judicial review of an order of the Commission, substantial evidence consists of more than a mere scintilla but may be less than a preponderance of evidence, such that a reasoning mind would conclude that the evidence was sufficient to support a particular conclusion.  
Illinois Bell Telephone Co. v. Illinois Commerce Comm'n
, 283 Ill. App. 3d 188, 200 (1996).  A party who challenges a finding of the Commission on the ground that the finding was not supported by substantial evidence must do more than merely show that the evidence supports a different conclusion.  To prevail, the party must demonstrate that the opposite conclusion was clearly evident.  
Abbott Laboratories, Inc. v. Illinois Commerce Comm’n
, 289 Ill. App. 3d 705, 714 (1997).

In this case, ComEd challenges the Commission’s factual findings and conclusions regarding a monopolist’s advantage if ComEd were allowed to enter the energy support services market.  In its reasoning, the Commission found the following: ComEd’s ability to offer “one-stop shopping” to its customers by offering energy support services bundled with remotely generated electricity would result in a monopolist’s advantage for ComEd in the energy support services market; this would seriously disadvantage competitors in the energy support services market because these competitors do not have the ability to offer energy users energy support services bundled with remotely generated electricity; if ComEd were permitted unlimited entry to the energy support services market with its monopolist’s advantage, it would drive competitors from the market; and after competitors had left the market, ComEd would have a dominant market position which it could “reasonably be expected to exploit by offering noncompetitive prices for energy support services.”  

The Commission based its findings and conclusions on Schlaf’s testimony.  Schlaf’s testimony, as it related to the advantages ComEd would have over competitors in the energy support services market, was as follows:

“The petition is not likely to convenience the public because it could harm the competitiveness of the energy support services market by allowing ComEd to exploit their monopoly over their transmission system.  ComEd would have an advantage over other providers of unregulated energy support services because other energy service providers could only provide electricity by generating it on the customer’s site.  In contrast, ComEd has access to its transmission system to allow it to generate the power off-site and move it to the customer.  Since ComEd refuses to provide transmission access to its competitors, other energy service providers do not have this option.  Before ComEd is allowed to sell bundled energy services on an unregulated basis, ComEd should provide transmission access on a non-discriminatory basis.”

Based on Schlaf’s testimony, the Commission could have reasonably concluded that ComEd had a monopolist’s advantage with respect to the energy support services market.  It follows that ComEd’s monopolist’s advantage would seriously disadvantage its competitors in the energy support services market and that, if ComEd were allowed to enter the energy support services market with this monopolist’s advantage, competitors would be driven from the market.  It is a reasonable conclusion that without competitors ComEd would have a dominate position in the energy support services market that it would exploit by offering noncompetitive prices.

None of ComEd’s contrary arguments show that conclusions opposite to those the Commission stated in its order are clearly evident.  ComEd’s own evidence that its customers want “one-stop” shopping undercuts its arguments that it would not have a monopolist’s advantage.  ComEd does not dispute Schlaf’s testimony that ComEd has refused to allow its competitors to have access to its transmission system.  It follows that ComEd is the only electricity provider that can deliver remotely generated electricity to users in ComEd’s area.  If, as ComEd’s evidence shows, users want to have one-stop shopping, ComEd effectively has  a monopolist’s advantage.

For these reasons, we find that the record contains substantial evidence that supports the Commission’s factual findings and conclusions regarding ComEd’s monopolist’s advantage.  Accordingly, reversal of the Commission’s order on the ground that there was no such substantial evidence in the record is not warranted.

For the foregoing reasons the order of the Interstate Commerce Commission is affirmed.

Affirmed.

INGLIS, J., concurs.

Justice McLaren, specially concurring in part and dissenting in part:

I concur in the portion of the opinion that finds error when the Commission relied on and applied section 9--230 of the Act. I dissent because I believe the cause should be remanded for further proceedings to allow the Commission to reconsider its judgment without the application of section 9--230 and to set forth its reasoning and findings of fact so that a meaningful review, if necessary, may be accomplished.

ComEd claims that the Commission did not properly apply the balancing test. The majority agrees with ComEd that the Commission's order does not explicitly balance the individual benefits and costs which the parties asserted would result from ComEd's provision of energy support services.  However, the majority then determines that a broad statement made by the Commission indicates that it did apply the test and that the test was applied properly.  The majority concludes that the statement "that ComEd did not even meet a lesser public convenience standard" establishes that the Commission properly applied the balancing test.  The former statement, taken at face value, indicates that the Commission was aware of the need for applying the balancing test. It does 
not
 establish that the balancing test was applied properly. The latter statement is simply a non sequitur. A little boy when asked why he did not like another little boy responded by saying, "because I don't like him 
a lot
."

Finally, the majority determines that the Commission determined that ComEd's petition did not satisfy the public convenience standard based upon the following:

“'Permitting ComEd to enter the energy services market with a monopolist's advantage over an important element of potential services, remotely generated energy, in the market will not convenience the public. In fact, 
the public will be harmed by such permission
. [(Emphasis added by the majority.)]

* * * 

Denying ComEd's petition will not exclude Unicom from the energy services market. As an unregulated entity, Unicom may enter the energy services market at its pleasure.'  

For these reasons, we conclude that the Commission would have decided to deny ComEd's petition even if it had not relied on section 9--230."  
Commonwealth Edison Co. v. Illinois Commerce Comm'n
, No. 2--97--0657, slip op. at 12 (        1998), quoting the Commission 's order.

The above extract might prove that left to its own devices the commission would repeat its decision. However, it sets forth neither the rationale nor the facts that we must review in order to determine if the Commission properly fulfilled its duties.  First, I submit the emphasized portion of the extract above is a conclusion, not a fact as characterized by the Commission. Second, on review, when we ask "why" this does not serve the public convenience, the Commission's answer is essentially "because.” Third, what Unicom may or may not do is irrelevant and immaterial to the issue of the public convenience standard. What Unicom does or does not do, unless it is established that Unicom can do it better, is meaningless. In addition, the Commission’s position appears internally inconsistent in that it contends that ComEd, with all its monopoly powers, can drive competitors out of the market and make inordinate profit, while the Commission simultaneously contends that under section 9--230 consumers could be at risk and have to subsidize the nonprofitable endeavor.

Based upon the lack of a finding in the record and the Commission’s erroneous reliance on section 9--230, I am not convinced, as is the majority, that a different result may not reasonably occur if the cause is remanded. The Commission may realize that conclusions are not facts, that the other entities that may enter the market are relevant only if there are greater benefits or fewer burdens that the Commission has not placed in the record. Finally, the Commission may wish to point out how, with deregulation, ComEd will still have a monopoly, or, if there is a partial monopoly, how that will adversely affect consumers.  I therefore believe that this cause should be remanded for further proceedings consistent with this dissent.