(No. 37357.—

RAYMOND C. BRUCE, Appellant, *vs.* THE DEPARTMENT OF REGISTRATION AND EDUCATION *et al.*, Appellees.

*Opinion filed February 1, 1963.*

CHARLES D. SNEWIND, and CROWLEY, SPRECHER, BARRETT & KARABA, all of Chicago, (ROBERT A. SPRECHER, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, EDWARD A. BERMAN, and BERNARD GENIS, Assistant Attorneys General, of counsel) for appellees Department of Registration and Education and Vera M. Brinks.

PETERSON, LOWRY, RALL, BARBER & ROSS, of Chicago, (OWEN RALL and JOHN R. PORTER, of counsel,) for appellee Edgar T. Stephens.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an administrative review action begun by the plaintiff, Raymond C. Bruce, a dentist licensed in 1923. Plaintiff, on the relation of the secretary of a committee of the Chicago Dental Society, was charged with violating the Dental Practice Act, (Ill. Rev. Stat. 1953, chap. 91, par. 62) in 1954 and several years prior thereto by professionally associating with a dental laboratory technician, one Martin Dorner doing business as Capitol Dental Laboratories and Dorner Dental Laboratories. After numerous hearings before the Dental Examining Committee, the Director of Registration and Education entered an order revoking the license of the plaintiff. An administrative review action was filed in the circuit court and said order was affirmed. This is an appeal from the judgment of the circuit court. We have jurisdiction by virtue of section 7h of the Dental Practice Act.

The plaintiff was licensed to practice as a dentist in 1923 after graduation from Northwestern Dental School. He practiced continuously in Chicago as a dentist except for a ten-year period when he was in the linen supply business. In 1949 he purchased certain dental equipment and laboratory supplies from a Dr. Maas and took over Dr. Maas's practice at 3241½ North Ashland located in the same building with Dorner's dental laboratory. Plaintiff testified that

Dorner did all of his laboratory work. He testified, however, that he never had patients referred to him by Dorner and that none ever came to him as a result of an advertisement of Dorner's laboratory in the Chicago Red Book classified telephone directory. The plaintiff admitted that in 1950 dentures were once displayed in the sidewalk show window, but he stated that immediately upon noticing these displays, which he stated were made by Dorner, he insisted that they be removed.

Martin Dorner testified at the initial hearing held on September 27, 1954, that he had been a dental technician for 31 or 32 years. He stated that in 1949 or 1950 he leased premises at 3241½ North Ashland Avenue for his dental laboratory and the plaintiff leased adjoining premises at the same address for his dental office. In 1952 he moved to 3326 North Ashland, a building he owns, and the plaintiff also moved, renting 3 rooms from Dorner at $100 a month rent. The names of both the plaintiff and Dorner were on the front of these two locations with common office hours stated. They used a common front entrance and reception room. Each man had his own equipment and telephone.

Dorner stated that he had been advertising in the Chicago Red Book for several years, using quarter page ads similar to one that was introduced into evidence. He asserted, however, that this advertising was only for the purpose of obtaining work from dentists. It was admitted that at the time of the hearing the plaintiff was Dorner's only customer and he could not remember when he had done work for another dentist.

The relator, Edgar Stephens, the secretary of the Legislation & Law Enforcement Committee of the Chicago Dental Society, called as a witness Mrs. F. E. Freedlund, the widow of a dentist and an employee of the Chicago Dental Society. She testified that she was sent to the plaintiff's office by the attorney for the relator "to look around" and "to make a report." She testified that nobody

in that laboratory did any work or collected any money from her except Dr. Bruce. Dorner did not contact this witness in any manner.

After the hearing on September 27, 1954, the committee recommended that the case be dismissed.

On January 10, 1955, the relator, without any prior notification to the plaintiff, moved that the case be reopened to hear newly discovered evidence, which request was granted *ex parte*. The plaintiff was thereafter notified to appear on February 7, 1955, for further hearing upon the complaint. The precise nature of the evidence that the relator intended to present was not disclosed.

At the hearing on February 7, 1955, a new witness, Evelyn Sankiw, who had recently been employed by the American Medical Association and who had been a dental assistant, was called by the relator. She testified that in December, 1954, she was recommended to Capitol Dental Laboratory by a former patient of Dr. Bruce's who had had work done there. She stated that she found the telephone number of the laboratory in the Red Book and called for an appointment on December 10. She stated that Dorner met her in the reception room and acknowledged that she had made the appointment with him. According to this witness, Dorner showed her dentures and quoted prices and that the sum of $150 was agreed upon. Thereafter she went into the plaintiff's office and the plaintiff took impressions of her mouth. Dorner later returned to assist in the examination and, according to Miss Sankiw, put his fingers inside her mouth. She also stated that the plaintiff asked Dorner's advice with reference to the necessity of an operation to remove a growth on the lower portion of her mouth. Approximately six days later she returned for a "try-in", also conducted, according to Miss Sankiw, in part by Dorner who again examined her face and mouth. Later she returned and picked up the completed dentures.

She further testified that she was dissatisfied with the dentures, returned to the plaintiff's office and complained, and finally, after the dentures continued to be unsatisfactory, complained to the Chicago Dental Society. The plaintiff then refunded the full purchase price of $150 which had been paid to him.

Plaintiff's counsel objected to the Sankiw testimony on the ground that it purported to cover events which occurred after the time mentioned in the complaint, February 4, 1954, and prior thereto, but he did cross-examine this witness subject to the objection. Plaintiff's counsel asked this witness the name of Dr. Bruce's former patient who allegedly sent her to the laboratory, but the board ruled that she was not required to identify that person. .

The plaintiff denied that Dorner put his fingers in Miss Sankiw's mouth in plaintiff's presence. He stated that she made the appointment over the telephone with him and that he met her in the reception room and showed her sample dentures outside Dorner's presence, that she selected one for $150, that she paid him and he gave her a receipt. Dorner was called in, according to the plaintiff, for consultation on how the plaintiff wanted the teeth arranged.

At the February 7th hearing the relator was given permission to subsequently file an amended complaint and plaintiff was granted five days after the filing of the amended complaint to ask for a further hearing. The board ordered that the evidence offered theretofore "shall be received in proof of violation of the amended complaint." Later, on February 14, 1955, the amended complaint dated February 11, 1955, was filed, which was substantially similar to the original complaint, but with changed dates. The plaintiff did not request any further hearing. Upon the board's recommendation the Department of Registration revoked the plaintiff's license on May 26, 1955. This order was reversed and remanded by the circuit court of Cook County which found that "because of the amended com-

plaint having been filed subsequent to the hearing held thereon, the plaintiff should be given an opportunity to adequately defend said charges."

At a subsequent hearing held before the committee on November 17, 1958, the plaintiff's attorney said with reference to a future hearing "May we stipulate that any witnesses that testified in the original case be available for additional cross-examination?" and the legal adviser for the Examining Committee responded "Yes, I think that is fair" and directed, apparently to both attorneys, "You have your witnesses here and they be available for cross-examination." The attorney for the relator responded that he did not expect to produce any additional evidence.

Thereafter on several occasions plaintiff's counsel advised the Examining Committee that Evelyn Sankiw could not be located and did not live at the address previously given by her. Plaintiff moved that the committee produce this witness, or that her testimony be stricken and that the complaint be dismissed, all of which were denied. Plaintiff also filed a motion for a change of venue on February 9, 1959, alleging prejudice on the part of the committee, which motion was also denied.

Martin Dorner thereafter testified on behalf of the plaintiff and stated that he had never shown Evelyn Sankiw any dentures, had never discussed with her the price of or the making of any dentures, had never put any part of his hand in her mouth and had never seen her outside the presence of the plaintiff. He testified that the plaintiff had called him in to look at Miss Sankiw's mouth, but that all the laboratory work he did in regard to the dentures was done under the supervision of Dr. Bruce. The plaintiff again testified on his own behalf and confirmed substantially his testimony of February 7, 1955.

Based upon the foregoing facts the Examining Committee found that the plaintiff (1) was professionally associated and connected with Martin Dorner doing business

as Capitol Dental Laboratories and Dorner Dental Laboratories, (2) aided and abetted Dorner to unlawfully engage in the practice of dentistry, (3) solicited business from the general public through Dorner and (4) took impressions for and used the services of Dorner while he was soliciting business from and dealing directly with the general public. All of the foregoing are prohibited by section 7 of the Dental Practice Act (Ill. Rev. Stat. 1953, chap. 91, par. 62,) and if proved would justify the revocation of plaintiff's license. *Menning* v. *Dept. of Registration,* 14 Ill.2d 553; *Parker* v. *Dept. of Registration,* 5 Ill.2d 288.

Plaintiff here contends: (1) that his motion for a change of venue should have been allowed; (2) that he was denied due process of law in that he did not receive adequate notice of the hearing on February 7, 1955, and at no time had sufficient opportunity to cross-examine the witness, Evelyn Sankiw, and (3) that the order of revocation by the Director of Registration and Education was against the manifest weight of the evidence.

The plaintiff's motion for a change of venue came after the committee had already ruled against the plaintiff on both the merits of the case and certain procedural points. Moreover, the charge of prejudice appeared to be primarily based upon the fact that those hearing the case were members of the same dental association that was prosecuting the case, which was known to the plaintiff several years before this motion was filed. For these reasons the motion for a change of venue was properly disallowed.

The plaintiff contends that because the hearing on February 7, 1955, followed the *ex parte* reopening of the case and dealt with incidents that occurred subsequent to the dates specified in the complaint and about which he did not receive any previous notice, that he was denied due process of law. In addition he contends that because Evelyn Sankiw was called as a surprise witness that he did not have a fair opportunity to cross-examine her.

Appellees, on the other hand, contend that notice of the precise incident about which Miss Sankiw testified was not necessary in that it related to the general charge that plaintiff was associating professionally with Dorner. They contend that the plaintiff was given ample opportunity to cross-examine this witness at the February 7th hearing and that the question of further cross-examination was purely discretionary on the part of the committee.

The Dental Act provides that prior to revoking any license the Department must give at least ten days notice of the date set for the hearing upon the complaint setting forth the facts upon which the revocation is sought. The license holder under the act must have ample opportunity to be heard with reference to the specific charges made. We have held that in a proceeding of this nature due process of law requires a definite charge, adequate notice and a full, fair and impartial hearing. (*Kalman* v. *Walsh*, 355 Ill. 341.) The charges should be so drawn as to bring the misconduct clearly within the statute and should specify the "time and place when and where" such prohibited act occurred. The charges must be in writing and contain direct, positive and specific charges based upon the alleged commission by the accused of some of the acts prohibited by section 7.

However, we have also held that a complaint alleging the violation of the Dental Practice Act does not need to be drafted with the same precision or detail as a pleading in a court of record. (*Kalman* v. *Walsh*, 355 Ill. 341.) The complaint is sufficient if it fairly apprises the practitioner of "the acts of misconduct with which he is charged so that he may properly prepare to defend such charges." (*Tarr* v. *Hallihan*, 375 Ill. 38.) Under this test the amended complant filed in the present case appears to be clearly adequate. It alleges in detail certain specific violations relating to advertising and denture display, and also alleges a continuous association on the part of plaintiff with Dor-

ner beginning four years before the filing of the original complaint and continuing through February 11, 1955. It is not necessary to allege each instance to be relied upon to sustain the charge of a continuing professional association between plaintiff and Dorner.

However, the circumstance of the board's recommendation of a dismissal, followed by the *ex parte* reopening of the case without any additional notice as to the nature of the new evidence or charges to be presented, in our opinion resulted in the defendant's being deprived of a fair hearing. Miss Sankiw's testimony concerning her visit to plaintiff's office in December of 1954 was very crucial. It represented the only additional evidence offered by the relator after the case had been reopened and resulted in an opposite recommendation by the committee. Yet, at the time of the receipt of the notice of the hearing to be held on February 7, 1955, Dr. Bruce knew only that he had been accused of associating with Dorner on February 4, 1954, and prior thereto, but that these charges would probably be dismissed on the recommendation of the hearing committee. The fact that his attorney did actually cross-examine this witness in no way dispenses with the requirement that the license holder have *prior* notice as to the charges against him and the dates thereof. The circuit court of Cook County originally held that at the February 7th hearing the plaintiff did not have an opportunity to adequately defend himself against the new charges made by Miss Sankiw and we agree with this conclusion.

After the order of remandment, the board's legal adviser directed the relator's attorney to have his previous witnesses available for cross-examination; this was not done and during the oral argument before this court his attorney stated that no effort had been made by the relator to reproduce this witness. Appellees' position is simply that the opportunity to cross-examine Miss Sankiw at the hearing on February 7 was all that plaintiff was entitled

to and that the board's later ruling that she need not be produced was purely a matter of discretion. We cannot agree with this contention. The right to practice dentistry is a valuable right that is a property right within the due-process-of-law clause of the constitution. (*Kalman* v. *Walsh*, 355 Ill. 341.) The revocation of plaintiff's license to practice dentistry cannot, therefore, be accomplished except by strict compliance with the due-process principles of adequate notice followed by a full and fair hearing. At the time of the hearing on February 7, 1955, the plaintiff had no previous notice whatever as to any alleged violations subsequent to February 4, 1954. Miss Sankiw should not have been allowed to testify as to events that occurred in December of 1954 until the amended complaint was filed and the plaintiff given the statutory ten days notice of the new charges. After she was improperly allowed to testify at this time the relator should have complied with the subsequent direction of the committee's legal adviser to produce all of his previous witnesses, including Miss Sankiw, for further cross-examination. In our opinion, the committee's subsequent refusal to expunge this witness's testimony in absence of her being produced by relator constituted error.

The plaintiff further contends that the order of revocation entered by the board, even considering the testimony of Evelyn Sankiw, is against the manifest weight of the evidence.

The findings of an administrative review agency are deemed *prima facie* true and correct and the courts may not reweigh the evidence or make an independent determination of the facts. (*Menning* v. *Dept. of Registration*, 14 Ill.2d 553.) However, the findings of an administrative agency must be based upon substantial evidence and if they are against the manifest weight of the evidence, these findings may be set aside.

The parties in their respective briefs agree that the

essence of the case against the plaintiff was his alleged unlawful professional association and connection with Dorner, a dental laboratory operator who was admittedly unlicensed to practice dentistry. Under the Dental Practice Act it is permissible for a dentist to utilize the services of a laboratory technician to assist in such matters as the actual manufacture and repair of dental plates. A technician may, subject to certain restrictions, advertise to the dental profession only.

In a previous case we held that Dorner's advertising in the Chicago telephone directory and display window did violate the Dental Practice Act, in that it amounted to a "Media calling attention to the public" to his business. (*People ex rel. Chicago Dental Society* v. *A.A.A. Dental Laboratories*, 8 Ill.2d 330.) However, at the time of the alleged violations in the present case the circuit court order in the *A.A.A. Dental Laboratory* case to the effect that Dorner was not in violation of the act had not, as yet, been reversed by this court. Furthermore, the record discloses no competent evidence that the plaintiff actually participated in Dorner's advertising in the classified telephone directory or that he received any business from that advertising. To sustain his charge to the contrary, the relator relies heavily upon the fact that immediately upon beginning his practice in the location adjoining Dorner's laboratory the plaintiff obtained an average of fifteen denture cases a week. This indicates, according to appellees, that Dorner must have been referring people who responded to his advertising to the plaintiff.

Plaintiff testified, however, that in 1949 he took over the established practice of a Dr. Maas, who the plaintiff stated, sent out cards to his former patients announcing that the plaintiff would thereafter handle their cases. Dr. Bruce testified that he retained 85% of Dr. Maas's former patients and that almost all of his practice consisted of regular patients. Plaintiff stated that after he took over

Dr. Maas on occasions returned to the office and indicated that he was retired and for two or three years after his sale to the plaintiff lived in Momence. The relator offered no evidence that contradicted this testimony except a photograph taken in 1952 of a dental office on Irving Park Road with the name of a Dr. Maas on the front door and a listing in a 1952 telephone directory in the name of a Dr. Maas. This evidence does not appear to be in any way inconsistent with the testimony of the plaintiff concerning events that occurred in 1949 and for two or three years thereafter. Yet, the board found that, contrary to Dr. Bruce's claim of having succeeded in 1949 to the practice of Dr. Maas, the latter, who was not called as a witness, actually "held himself out thereafter as practicing dentistry at 3054 West Irving Park Boulevard." Apparently on the basis of this finding and the plaintiff's testimony that he knew of Dorner's advertising, but that "it did not affect" him, the board concluded further that the plaintiff, through Dorner, solicited business from the general public. It should be noted that this conclusion was based entirely upon evidence received prior to the board's initial recommendation that the charges against the plaintiff be dismissed. Miss Sankiw, who testified later, stated that, although she obtained Dorner's telephone number from the Red Book, she did this only after a former patient of Dr. Bruce's had recommended the laboratory to her. In our opinion the board's finding that the plaintiff solicited business from the general public in violation of the Dental Practice Act is contrary to the manifest weight of the evidence.

The principal evidence as to the plaintiff's alleged professional association or connection with Dorner and the plaintiff's aiding and abetting Dorner to practice dentistry was the testimony of Evelyn Sankiw. This was the only additional evidence offered subsequent to the recommendation that the charges against the plaintiff be dismissed.

The testimony of Miss Sankiw, if believed, tended to establish that the plaintiff did allow Dorner to go somewhat beyond his stated duties as a laboratory technician. Her testimony indicated that the plaintiff on the occasion of her obtaining new dentures allowed Dorner to actually examine her mouth for the purpose of making a professional determination concerning the advisability of an operation. She also stated that Dorner on subsequent occasions actively took part in attempting to adjust the dentures so that they would fit properly. Both the plaintiff and Dorner denied those portions of Miss Sankiw's testimony dealing with Dorner's improper participation in the obtaining by her of new dentures. They stated that Dorner was used only for consultation purposes and did all of his work under the plaintiff's supervision. Miss Sankiw confirmed that the plaintiff made the actual impressions of her mouth and that she paid the plaintiff for the dentures.

At most Miss Sankiw's testimony indicates that on one occasion Dr. Bruce improperly utilized the advice and services of a laboratory technician in a professional capacity. Such evidence does not support the committee's finding that Dorner "in the usual course of his business displays dentures . . . to prospective customers who come into said premises, establishes the cost of the dentures for them, and Respondent takes the impressions and makes fitting for said customers, assisted by said Martin Dorner." It was upon this erroneous finding that the further conclusion that plaintiff associated with Dorner professionally and aided and abetted him to practice dentistry was apparently based. This conclusion is not, therefore, supported by adequate evidence. Moreover, the committee's express finding that Dorner merely assisted the plaintiff appears to be more consistent with Dr. Bruce's explanation that Dorner was simply called in for the purpose of consultation than with the testimony of Miss Sankiw, and indicates that perhaps even the committee did not accept all of her testi-

mony at face value. Miss Sankiw testified initially that the individual who sent her to Dorner's lab did so because "they are supposed to be good." Later, however, she indicated that the work done for this person was unsatisfactory. This inconsistency, as well as her failure to identify this person and the subsequent inability of plaintiff's counsel to locate her for further cross-examination, are all factors that must be considered in evaluating her testimony.

Mrs. Freedlund, who was sent to the plaintiff's office by the relator's attorney to make a report, apparently observed nothing improper about its operation.

The Department's order revoking plaintiff's dental license held since 1923, that was principally based upon the contradicted testimony of a single witness as to a single transaction is against the manifest weight of the evidence and cannot be allowed to stand. Due process requires that "the guilt of any defendant of the charges made in the complaint against him must be established clearly and conclusively by competent evidence" before his professional license can be revoked. *Schireson* v. *Walsh,* 354 Ill. 40.

For the foregoing reasons the judgment of the circuit court is reversed and the cause is remanded to that court, with directions to set aside the Department's order revoking plaintiff's license.

*Reversed and remanded, with directions.*