(No. 37461.—

BENNIE F. GIBBS, Appellee, *vs.* WM. ORLANDI, Director of Mines and Minerals, *et al.,* Appellants.

*Opinion filed March 22, 1963.*

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and EDWARD A. BERMAN, Assistant Attorneys General, of counsel,) for appellants.

HORSLEY AND VESPA, of Springfield, (G. WILLIAM HORSLEY and ROBERT F. VESPA, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion, of the court:

The Illinois Civil Service Commission discharged the plaintiff, Bennie Gibbs, from his position as a Mine Rescue Supervisor for violating the Political Activity Act, in that he distributed campaign literature. (Ill. Rev. Stat. 1961, chap. 24½, par. 38t(h).) On administrative review the circuit court reversed the order of the Civil Service Commission, and ordered plaintiff reinstated with back pay. The judgment has been appealed directly to this court. *Lindeen v Illinois State Police Merit Board,* 25 Ill.2d 349; cf. *Burke v. Civil Service Commission,* 26 Ill.2d 609.

The defendants contend that the decision of the Commission was amply supported by the evidence. Plaintiff disagrees, and also argues that there is no evidence of a violation of the Political Activity Act.

The Political Activity Act provides in part as follows:

"Section 1. *Application of Act.* This act shall apply to all employees of the State whose employment or tenure is subject to recognized merit principles of public employment.

"§ 2. *Prohibited Political Activity.* Any employee subject to this Act may be discharged in accordance with the discharge procedures controlling his position for participation during regular working hours in any of the following acts: * * * (h) Distributing campaign literature or material in behalf of any candidate."

On November 13, 1961, charges were filed against Gibbs, and on November 30, 1961, he was discharged. Prior to the hearing requested by Gibbs, the Department of Mines and Minerals filed its bill of particulars charging that on October 8 and 25, 1960, Gibbs, while on duty at the Mine Rescue Station in Eldorado, Illinois, did have on display and available for distribution certain literature on behalf of Republican candidates, and supplied and distributed said literature. The bill of particulars further charged that Gibbs permitted his car to be used for electioneering. However, Gibbs was found not guilty of this charge by the Commission and the issue is, therefore, not before us.

The Department produced three witnesses relating to the charges involved here. The first was Gilbert Barton, who testified that he presently held a job under the Democratic Party. On October 8 and 25, 1960, he was sent by one Martin Hooper to Gibbs's office for the purpose of identifying the literature. On both occasions he just stepped inside the door and saw political literature of Stratton and Carpentier lying on the table or desk ten or fifteen feet away. He did not go over and examine it, and did not know what

other literature there was or who put it there. He told no one about the literature but Martin Hooper.

On the same two days A. P. Harrawood went to Gibbs's office at the request of Hooper. He testified that he went for the sole purpose of finding Stratton literature, because he wanted to help Hooper get Gibbs's job. He also saw Stratton and Carpentier literature. He would not say that there wasn't any Democratic literature.

Martin Hooper also testified that he went to the office on October 8 and 25, 1960, and that he saw Nixon and Stratton literature. He further testified that he had made application for Gibbs's job and that the Democratic county chairman filed the complaint with the Department.

None of the foregoing witnesses discussed politics with Gibbs or saw him handle the literature, nor did they know the source of the literature. None of the alleged literature was introduced in evidence.

A. C. Byrum, a former Democratic chairman; Jack Metten, who identified himself as a Democrat; Fern Cagle; and Almon Tucker testified in behalf of Gibbs. They testified that candidates would come in and leave literature on the table. The Democratic coroner was one of those who left his cards. None noticed large quantities of campaign literature. Cagle testified that some Stratton stickers were mailed to the office. They did not know that Gibbs engaged in political activity. Gibbs denied that Hooper had been present in his office, or that he had political literature in his office.

Subsequent to the hearing, the hearing officer found Gibbs guilty of having on display and available for distribution to the public "literature on behalf of Republican candidates running in the election of November 8, 1960; that he is guilty of distributing to the public said political literature," and he was ordered discharged. Thereafter the Civil Service Commission supplemented the findings by

adding that Gibbs was also guilty of having on display and available for distribution literature on behalf of Democratic candidates. As supplemented, the hearing officer's report was approved.

The circuit court of Sangamon County, on administrative review, found that the acts of Gibbs did not amount to a violation of the Political Activity Act and reversed the decision of the Commission.

On this appeal we readily agree with the defendants that neither this court nor the trial court is authorized to reweigh the evidence nor make an independent determination of the facts. (*Parker* v. *Department of Registration and Education,* 5 Ill.2d 288.) Nevertheless, an administrative decision must be supported by substantial evidence, and the courts have the right to review all questions of law and fact presented by the record. *Bruce* v. *Department of Registration and Education,* 26 Ill.2d 612; *Wallace* v. *Annunzio,* 411 Ill. 172; *Drezner* v. *Civil Service Commission,* 398 Ill. 219.

We have reviewed the entire record in this light. We find that there is substantial evidence in the record to indicate that campaign literature on behalf of candidates of both major political parties was on a table or desk of the office of plaintiff during the 1960 election campaign. There is not a scintilla of evidence that the plaintiff Gibbs procured the literature; that he placed it in public view; that he handed the literature to anyone or engaged in any political activity of any kind in his office.

The actual issue before us is, therefore, a narrow one. Did the acquiescence of Gibbs in permitting political literature to remain in his office constitute "distributing campaign literature or material on behalf of any candidate" within the meaning of the Political Activity Act? We believe this question must be answered in the negative.

While the purpose of the Political Activity Act is to

maintain political neutrality in the civil service system, that very system was designed to give merit employees, such as plaintiff, security from discharge on frivolous grounds. Plaintiff was a civil service employee working in an office under the control of the Director of Mines and Minerals, a political appointee of the Governor. The result of the Commission's decision would require that plaintiff be ousted if he failed to object if the Director himself were to place political literature in his office. A reading of the other offenses subjecting an employee to discharge under the Political Activity Act is indicative of the intended meaning of "distributing", as used by the legislature. "Participating in the organization of any political meeting;" "soliciting money," "selling or distributing tickets;" "assisting at the polls;" "using or threatening to use the influence or authority of his position to coerce or persuade;" "initiating or circulating any petitions;" and "making contributions of money;" all clearly denote positive affirmative political acts. (Ill. Rev. Stat. 1961, chap, 24½, par. 38t.) So also, distributing political literature would commonly mean more than mere acquiescence in the placement of literature in the office.

We are unconvinced by the semantic arguments of the defendants seeking to broaden the meaning of "distributing" to cover the activities of Gibbs. We do not believe that the legislature intended to permit the discharge of merit employees upon mere proof that they permitted campaign literature to remain in their office. We, therefore, find that the trial court was correct in reversing the decision of the Commission. The judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*