FIRST DIVISION

February 1, 1999

No. 1-97-4155

PETER FINNERTY,

Plaintiff and Petitioner-Appellant,

v.

PERSONNEL BOARD OF THE CITY OF CHICAGO; THE CITY OF CHICAGO, THE CITY OF CHICAGO, a municipal corporation; REVEREND LUCIUS HALL, Chairman; ROGER J. BALLA, Hearing Officer; TIMOTHY J. JOHNS and ROBERT G. GIBSON,

Defendants and Respondents- 

Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 96 CH 13793

Honorable

Stephen Schiller,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, Peter Finnerty, appeals from a circuit court judgment affirming an administrative decision by the Personnel Board (the Board) of the City of Chicago (the City) to discharge plaintiff for his violation of the City's personnel rules.  For the following reasons, we affirm the judgment of the circuit court.

In 1987, plaintiff, who was employed by the City of Chicago as a motor truck driver in the Department of General Services,  apparently suffered a duty-related back injury that rendered him unable to work.  The record contains little to shed light on the circumstances of the injury, but plaintiff received duty disability benefits for two years.  During that time, on July 7, 1988, plaintiff filed a workers' compensation claim.  This claim was still pending at the time of plaintiff's discharge in 1990.  Sometime in 1989, plaintiff's duty disability leave ended when he was released to go back to work by defendant's physician.  Plaintiff did return to work in 1989.  Although his title of motor truck driver did not change, his duties now consisted of clerical work.  Plaintiff stopped appearing for work and time records indicate that he was last physically present at his job on September 19, 1989.  He then just stopped coming to work.

In October 1989, Mary Loye, a supervisor of personnel, attempted to contact Finnerty to advise him to request a medical leave of absence to preserve his benefits.  On one occasion she spoke with plaintiff's housekeeper.  On another occasion, she spoke with plaintiff himself, although he was pretending he was not at home.  When she finally did have a conversation with plaintiff, he indicated he was unable to come to work.  She requested a letter from his doctor and asked if he wanted a medical leave of absence.  He said he would get back to her regarding the leave of absence.

Plaintiff subsequently gave a letter to Loye which was signed by his physician, Dr. Gary R. Fahrenbach.  The letter, dated October 26, 1989, stated as follows: "To Whom It May Concern:  Mr. Finnerty has been under my care since 8/8/89 for extensive stasis ulceration of the right leg and ankle.  His condition requires physical therapy and whirlpool treatments three times each week.  He is currently disabled and cannot work."  Notably, the letter does not state that plaintiff's condition was related to any work-related injury.  Loye never received anything else from plaintiff to substantiate his claim that he was absent from work due to illness.  In fact, it is undisputed that, from that point forward, plaintiff made no attempt whatsoever to contact his employer.

Despite plaintiff telling Loye that he would get back to her regarding whether he wanted to take a medical leave of absence, he never did.  Within one week of her telephone conversation with plaintiff, Loye sent him two copies of the form needed to request a medical leave of absence.  One of the copies, sent by regular mail, was not returned.  The other copy, which was sent by certified mail, was returned unopened.  Plaintiff never requested a medical leave of absence.  Additionally, after plaintiff's original duty disability leave ended, he never requested another duty disability leave.  In fact, plaintiff never requested any type of leave which was available to him, and it is undisputed that plaintiff was not on any type of leave which was available at the time to employees, as defined by the City of Chicago's personnel rules.

The record shows that plaintiff never returned to work.  While the entries in plaintiff's time record for the remainder of 1989 indicate that he was carried on the payroll and received some compensation as "sick pay" or "vacation pay," the record contains no other evidence showing that plaintiff was sick or that he was on vacation.  In any event, plaintiff's time record for the first six months of 1990 contains no entries indicating that plaintiff was sick during that time.  The record was devoid of any evidence that plaintiff ever notified the City of his status after October 26, 1989, or that he contacted his employer at all, during the first six months of 1990 while he was absent from work.

Finally, on October 4, 1990, the City sent plaintiff a statement of charges advising him that his discharge was under consideration because he had violated the City's personnel rules.  He was informed which specific rules he had violated and was also advised that if he wanted to respond to explain his conduct he must do so in writing by October 12, 1990.  Plaintiff again failed to respond.

Next, by a certified letter dated October 24, 1990, the City informed plaintiff that the charges against him had been reviewed and that it had been noted that he failed to respond to those charges.  The letter further informed plaintiff that a decision to terminate him from his position had been reached and that the decision was effective at the close of business on October 25, 1990.  The letter also notified plaintiff of his right to a hearing before the Board to review the disciplinary action and that the request had to be received by the Board within five calendar days of plaintiff's receipt of the notice.

Plaintiff did respond.  He submitted a completed form entitled "Request For Review Of Disciplinary Action With The Personnel Board."  Under the section entitled "Reason For Appeal," plaintiff did not provide a reason that went to the merits, but instead noted that he had received the notice of a certified letter on October 26, 1990, to pick up certified mail at his local post office on October 27, 1990, and was, therefore, requesting a hearing.
(footnote: 1)
The hearing before the Board was originally scheduled for December 12, 1990, and finally took place nearly six years later on September 11, 1996.  During this time, there were apparently 14 continuances.  Plaintiff requested and was granted 11 continuances.  The City agreed to four of these and also requested two additional continuances.  The hearing officer continued the matter himself on one occasion.

Plaintiff did not personally attend the hearing, but was represented by counsel.  The only witness was Ms. Mary Loye, the supervisor of personnel.  The substance of her testimony was essentially an account of the foregoing described events.

 On November 11, 1996, the hearing officer submitted his report, which contained his findings and recommendation, to the Board.  This report noted that the basis for plaintiff's discharge was excessive absenteeism which, as alleged by the City, constituted violations of the City's personnel rules.  The specific violations involved the following: absence without leave; failing to call in advance when tardy or not showing up for work; having an irregular or excessive absence or tardiness record or a pattern of repeated absence or tardiness or at a 

specific time or on specific days of the week or month or in relation to holidays; and conduct unbecoming an officer or public employee.  The first three of these constitute conduct for which an employee's first offense may result in discharge action, although the second and third additionally require that discharge for a first offense is applicable only where the health, safety or welfare of a person is endangered.

The hearing officer's findings were that the testimony and documentary evidence produced by the City proved by a preponderance of the evidence that plaintiff stopped coming to work on September 19, 1989, and while the doctor's excuse may have justified plaintiff's absence between September 8, 1989, and October 26, 1989, the excuse did not explain plaintiff's subsequent absences and failure to comply with the applicable personnel rules by calling in and/or furnishing current medical documentation that would justify his continued absence.  The report further stated that there was nothing in the personnel rules exempting an employee who has filed a workers' compensation claim from the absenteeism and call-in provisions.  Thus, absent such an exemption, there was no justification for plaintiff's year-long absence without any apparent effort on his part to keep his employer apprised of his medical condition and/or ability to return to work.  The hearing officer noted that the plaintiff's time sheet indicated no contact by him from January 1, 1990, through October 25, 1990.  The hearing officer recommended that plaintiff's termination be upheld based on his violation of the City's personnel rules. 

Based upon these findings and after a full discussion, the Board, on November 22, 1996, upheld the termination of plaintiff from his position with the City.  On December 19, 1996, plaintiff filed a petition for administrative review in the circuit court, which was later refiled as an amended complaint for a common law writ of 
certiorari
.  On October 14, 1997, after a hearing, the circuit court affirmed the Board's decision to uphold plaintiff's discharge and denied plaintiff's writ of 
certiorari
.  Plaintiff then filed a timely notice of appeal on November 10, 1997.

Several issues are raised on appeal.  The first of these is plaintiff's contention that the Board lacked jurisdiction to hear and decide this case because, at the time of the hearing, plaintiff had a workers' compensation claim pending before

the Industrial Commission.  In support of his contention that the Board was not the proper forum for deciding his case, plaintiff cites 
Rush-Presbyterian-St. Luke's Medical Center v. Industrial Comm'n
, 258 Ill. App. 3d 768, 630 N.E.2d 1175 (1994), for the proposition that it is the role of the Industrial Commission to decide the question of whether an injury arose out of the employment.  We agree with plaintiff and it is precisely for that reason that the Board was the proper forum to determine the issue in this case.  As the hearing officer aptly noted during the administrative hearing, while the Industrial Commission would be interested in whether an individual is injured, whether the injury was work-related, the extent of the injury and whether any disability is involved, the purpose of the administrative hearing had nothing to do with those issues.  Instead, the purpose of the hearing was to determine the accuracy of the charges upon which the City had based its termination of plaintiff, which was the violation of the City's personnel rules due to plaintiff's excessive absenteeism and failure to call in advance when he was not going to appear for work.  Contrary to plaintiff's assertion, should the Industrial Commission eventually determine that plaintiff's absence from work in 1990 was a result of a work-

related injury, such a finding would not preclude the Board's finding that plaintiff was absent without leave and subject to discharge.  The filing of a workers' compensation claim does not excuse an employee from continued compliance with an employer's personnel rules regarding employee absenteeism.  Even if plaintiff was medically unable to come to work as a result of a work-related injury, he had a separate responsibility to notify the City of the reason for his absence and to request leave to avoid being absent without leave.  It was not the City's responsibility to investigate plaintiff's whereabouts; it was plaintiff's responsibility to apprise the City as to why he was not showing up for work and not responding to the request that he take a leave of absence.   

Plaintiff additionally contends that, pursuant to the Illinois Workers' Compensation Act (820 ILCS 305/4(h)(West 1996))(the Act), it is unlawful for any employer to discharge or threaten to discharge an employee because of the exercise of his rights or remedies granted by the Act, but he fails to show how this
 statement of the law applies to the facts of the instant case.  Indeed, there is a tort remedy, the "retaliatory discharge" action, for employees who are discharged in retaliation for filing workers' compensation claims. 
Kelsay v. Motorola, Inc.
, 74 Ill. 2d 172, 384 N.E.2d 353 (1978).  Nevertheless, despite plaintiff's allusions to the law regarding retaliatory discharge, the present case is not a retaliatory discharge case.  Plaintiff has made no specific allegations that he was fired in retaliation for exercising any of his rights under the Act.  While plaintiff's counsel, in oral argument, alluded to the City's motive for discharging the plaintiff, plaintiff has failed to cite to any evidence in the record that would indicate any improper motive on the part of the defendants with respect to his termination.  We have thoroughly reviewed the record before us and have not found any evidence that would indicate that defendants interfered with or prevented plaintiff in any way from pursuing his workers' compensation claim for the 1987 injury or that plaintiff was 
discharged for exercising his rights pursuant to the Act.  Instead, the record before us indicates that plaintiff was discharged for no other reason than his excessive absenteeism, which constituted noncompliance with the employer's personnel rules.  In addition, the Board's determination of whether plaintiff's discharge was justifiable in no way interfered with plaintiff's exercise of his rights under the Workers' Compensation Act.

The thrust of plaintiff's argument is that the mere filing of a workers' compensation claim should operate as a stay of any administrative proceeding regarding his discharge until the resolution of the workers' compensation claim.  We reject this argument.  There is no such provision in the Act and plaintiff has cited no case law in support of this contention.  An argument is waived on appeal where a plaintiff fails to cite any authority for a general legal proposition, let alone authority that it should be imported into and applied to the record in an administrative review action.  See, 
e.g.
, 
Singh v. Department of Professional Regulation
, 252 Ill. App. 3d 859, 868, 625 N.E.2d 656, 662-63 (1993).  Thus, plaintiff's argument is waived.

Even if the issue were not waived, we would conclude that plaintiff's pending workers' compensation claim did not shield him from having to comply with the City's personnel rules.  While it has been noted that "[a] few jurisdictions prohibit the discharge, even pursuant to a neutral absenteeism policy, of an employee who has pursued a workers' compensation claim" (see 
Hess v. Clarcor, Inc.
, 237 Ill. App. 3d 434, 451, 603 N.E.2d 1262, 1274 (1992) (and cases cited therein)), that is not the law in Illinois.  It is well settled in Illinois that an employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury. 
Hartlein v. Illinois Power Co.
, 151 Ill. 2d 142, 160, 601 N.E.2d 720 (1992).  Therefore, it follows that just as an employer may fire an at-

will employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury, so too can an employer terminate a contractual employee for being absent without leave, when the employment agreement, as here, specifically states that just cause for termination includes such absenteeism.  The filing of a workers' compensation claim does not insulate an employee from being disciplined for failing to meet his obligation to obey personnel rules, including those that pertain to absenteeism.  Having determined that the Board's exercise of its jurisdiction over plaintiff's case was proper, we now turn to whether its decision was correct.

We shall first address the standard of review in this case, since the parties are not entirely in agreement on this issue.  Plaintiff brought the present action pursuant to a writ of 
certiorari
.  "A common law writ of 
certiorari
 is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review. [Citation.]" 
Hanrahan v. Williams
, 174 Ill. 2d 268, 
272,

673 N.E.2d 251, 253 (1996).  Decisions of the City of Chicago's personnel board are reviewable through a common law writ of 
certiorari
. 
Dubin v. Personnel Board of the City of Chicago
, 128 Ill. 2d 490, 495, 539 N.E.2d 1243, 1245 (1989).  The supreme court has described the scope of review in a 
certiorari
 proceeding as that in which "'the trial judge determines from the record alone whether there is any evidence fairly tending to support the order reviewed and cannot set aside the order unless it is palpably or manifestly against the weight of the evidence.'" 
Nowicki v. Evanston Fair Housing Review Board
, 62 Ill. 2d 11, 15, 338 N.E.2d 186, 188 (1975)
, quoting 
Superior Coal Co. v. O'Brien
, 383 Ill. 394, 400-01, 50 N.E.2d 453, 457 (1943)
; 
see also 
O'Boyle v. Personnel Board, 
119 Ill. App. 3d 648, 653, 456 N.E.2d 998, 1002 (1983).  The standards of review are essentially the same under a common law writ of 
certiorari
 and the Administrative Review Law.
 
735 ILCS 5/3-101 
et seq
. (West 1994); 
Hanrahan
, 174 Ill. 2d at 272, 673 N.E.2d at 253-54;
 First Access Material Handling v. Wish
, 297 Ill. App. 3d 396, 402, 697 N.E.2d 1139, 1143 (1998).  Recent supreme court cases have made it clear that a court's function, upon administrative review of an agency decision, is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998); 
Robbins v. Board of Trustees
, 177 Ill. 2d 533, 538, 687 N.E.2d 39, 42 (1997)
; 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E. 2d 1111, 1117 (1992).  While the parties here both maintain that the present case should be reviewed under the "manifest weight" standard, they dispute the quantitative aspect of the evidence required under this standard.  Specifically, plaintiff, citing 
Singh v. Department of Professional Regulation
, 252 Ill. App. 3d 859, 625 N.E.2d 656 (1993), contends that we must reverse the decision below unless it is supported by substantial evidence, a contention with which the defendant disagrees.

At one point, it was well-settled law that upon judicial review of an administrative agency's decision, its findings of fact had to be based upon "substantial evidence." See, 
e.g.
, 
Heft v. Zoning Board of Appeals,
 31 Ill. 2d 266, 201 N.E.2d 364 (1964);
 Gibbs v. Orlandi,
 27 Ill. 2d 368, 371, 189 N.E.2d 233 (1963);
 Bruce v. Department of Registration & Education
, 26 Ill. 2d 612, 622, 187 N.E.2d 711 (1963); 
cf. Outboard, Marine & Manufacturing Co., Johnson Motors Division v. Gordon
, 403 Ill. 523, 528, 87 N.E.2d 610, 613 (1949)(court will not disturb an administrative agency's findings of fact unless they are manifestly against the weight of the evidence 
or
 unless there is no substantial evidence to support them). 
 Nevertheless, in 1974
, the supreme court expressly rejected the use of the substantial evidence standard as used in the federal system for review of administrative matters in 
Basketfield v. Police Board
, 56 Ill. 2d 351, 358, 307 N.E.2d 371 (1974), and reaffirmed its position in 
Kerr v. Police Board
, 59 Ill. 2d 140, 141-42, 319 N.E.2d 478, 479 (1974).  This express rejection has previously been acknowledged. See, 
e.g.
, 
Parker v. Wright
, 262 Ill. App. 3d 661, 670, 635 N.E.2d 138, 144 (1994); 
Starkey v. Civil Service Comm'n
, 105 Ill. App. 3d 904, 908, 435 N.E.2d 176, 179 (1982), 
rev'd on other grounds
, 97 Ill. 2d 91, 454 N.E.2d 265 (1983)(noting that
 supreme court rejected the substantial evidence standard without mentioning or overruling those Illinois cases that had previously invoked that standard).

In spite of the supreme court's express rejection of the substantial evidence standard in 1974, subsequent decisions have applied the standard and have done so without mentioning 
Basketfield
 or 
Kerr
.  In some of these cases, the courts properly invoked that standard because the administrative review was pursuant to a statute which expressly required that the agency decision be supported by substantial evidence (
e.g.
, Illinois Human Rights Act (775 ILCS 5/7A--102(D)(2)(West 1994)), and Public Utilities Act (220 ILCS 5/10-201(e)(iv)(A)(West 1996)).
(footnote: 2)  On the other hand, in some of these post-
Basketfield
 cases, even where there is no specific statutory requirement for it, 
the supreme court has mentioned the substantial evidence requirement when reviewing administrative decisions. 
 
See,
 e.g., Carver v. Bond/Fayette/Effingham Regional Board of School Trustees,
 146 Ill. 2d 347, 
363, 586 N.E.2d 1273, 1280 (1992); 
Greer v. Illinois Housing Development Authority
, 122 Ill. 2d 462, 503, 524 N.E.2d 561, 579 (1988); 
Board of Education of Golf School District No. 67 v. Regional Board of School Trustees
, 89 Ill. 2d 392, 396-97, 433 N.E.2d 240, 242 (1982).  Appellate court decisions from most of the districts can be found that continue to state that administrative decisions must be supported by substantial evidence.
 
E.g., Chicago Transit Authority v. Didrickson, 
276 Ill. App. 3d 773, 776  659 N.E.2d 28, 31 (1st Dist. 1995) ("A reviewing court may not substitute its judgment for that of the agency unless the record lacks substantial evidence to support the agency's findings"); 
Garner v. Department of Employment Security,
 269 Ill. App. 3d 370, 374, 646 N.E.2d 3, 6 (2d Dist. 1995) ("If the agency's findings are not supported by substantial evidence, the agency will be reversed");
 Gray v. Department of Labor,
 176 Ill. App. 3d 285, 289, 531 N.E.2d 32, 34 (3rd Dist. 1988) ("If there is substantial evidence to support an agency's decision the decision must be affirmed");
 Lachenmyer v. Didrickson
, 263 Ill. App. 3d 382, 388
, 636 N.E.2d 93, 98 (4th Dist. 1994)("A reviewing court should not substitute its judgment for that of the agency unless the record lacks substantial evidence in support of the agency's findings")
;
 Ladenheim v. Union County Hospital District
, 76 Ill. App. 3d 90, 97, 394 N.E.2d 770, 775 (5th Dist. 1979) ("In an appeal of an administrative determination, the reviewing court is required to affirm if the determination is not manifestly against the weight of the evidence and if there is substantial evidence on the record to support the determination").  In view of the 
supreme court's express rejection of the substantial evidence standard in
 Basketfield
 and because our research has not disclosed another supreme court case that expressly overruled 
Basketfield
, we question the accuracy of the statements in those cases which state that an agency decision must be supported by substantial evidence.  We additionally note that the most recent supreme court cases, cited earlier in this opinion, 
City of Belvidere
, 
Robbins
, and 
Abrahamson
, in applying the manifest weight standard make no mention of a substantial evidence requirement.  Thus, we hold that, absent a specific statutory requirement to the contrary, administrative review of an agency decision need not consider whether the decision was supported by substantial evidence.  We shall therefore limit our analysis to those requirements that have been utilized as part of the manifest weight standard.
 

 Before we discuss the requirements under the manifest weight of the evidence standard, we first look to the requirements of the substantial evidence standard in order to illustrate the distinction between the two standards.  In 
rejecting the substantial evidence standard used in federal administrative review cases, the 
Basketfield
 court neither defined the substantial evidence standard, nor explained the distinction which it perceived between it and the "manifest weight" standard.  Nevertheless, 
looking to the definition contained in the federal cases, we note that the United States Supreme Court has defined substantial evidence as that which consists of "more than a mere scintilla" and also as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [Citation.]" 
Richardson v. Perales
, 402 U.S. 389, 401, 28 L. Ed. 2d 842, 853, 91 S. Ct. 1420, 1427 (1971).
(footnote: 3)  By contrast, our supreme court has stated that a decision is against the manifest weight of the evidence only when an opposite conclusion is clearly evident. 
City of Belvidere v. Illinois State Labor Relations Board,
 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998); 
Jack Bradley, Inc. v. Department of Employment Security
, 146 Ill. 2d 61, 73, 585 N.E.2d 123, 128 (1991).  The mere fact that an opposite conclusion is reasonable or even that the reviewing court might have ruled differently does not render a decision against the manifest weight of the evidence. 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  "If the record contains evidence to support the agency's decision, it should be affirmed. [Citation.]"
 Abrahamson
, 153 Ill. 2d at 88-89, 606 N.E.2d at 1117.  Interestingly, and although the parties apparently have assumed otherwise, it would appear that the substantial evidence standard is not nearly as exacting a standard as the manifest weight standard.  

It has also been explained that because the weight of the evidence and the credibility of the witnesses are uniquely within the province of the agency, there need only be some competent evidence in the record to support its findings. 
Iwanski v. Streamwood Police Pension Board
, 232 Ill. App. 3d 180, 184, 596 N.E.2d 691, 694 (1992).  An administrative agency's findings and conclusions on questions of fact are deemed to be 
prima facie
 true and correct. 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 204, 692 N.E.2d 295, 302 (1998); 735 ILCS 5/3-110 (West 1994).  

In the present case, the Board made specific findings based upon certain undisputed evidentiary facts which can be summarized as follows: (1) that the City proved by a preponderance of the evidence that the letter from plaintiff's physician dated October 26, 1989, explained his absence through that date but failed to explain his subsequent absences; (2) that the City proved by a preponderance of the evidence that plaintiff stopped coming to work on September 19, 1989; (3) that the City proved by a preponderance of the evidence that plaintiff ceased all contact with his employer between the dates of January 1, 1990, and the date of his termination on October 25, 1990; and (4) that although a workers' compensation claim apparently had been filed on plaintiff's behalf, this did not excuse him from continuing compliance with the personnel rules if he wished to retain his position with his employer.  Plaintiff apparently disputes all of these findings.  Applying the principles enunciated earlier, based upon the record before us, we conclude that the first three of these findings were not against the manifest weight of the evidence. 

Although not addressed by the parties, the Board's last finding, that plaintiff's pending workers' compensation claim did not excuse him from continuing compliance with the personnel rules if he wished to retain his position, can best be described as an interpretation of its own rules, rather than a "factual" finding.  Judicial review of an administrative agency's interpretation of its own rules is 
de novo
, but we give the agency interpretation deference. 
McTigue v. Personnel Board of the City of Chicago
, 299 Ill. App. 3d 579, 588, 701 N.E.2d 135, 142 (1998).  "'Courts apply the same rules of construction used in construing statutes when interpreting the meaning of an agency rule.' [Citation.]" 
Brown v. Chicago Park District,
 296 Ill. App. 3d 867, 875, 695 N.E.2d 1315, 1320 (1998).  Thus, the language of the agency rule is given its ordinary meaning. 
Brown v. Chicago Park District,
 296 Ill. App. 3d at 875, 695 N.E.2d at 1320.

One of the sections of the City's personnel rules, which plaintiff was found to have violated, clearly and unambiguously lists "[a]bsence without leave" as one of the reasons for which an employee can be discharged for a first time offense.  The phrase "absence without leave" can be given its ordinary meaning; it contains no term of art that requires a legal conclusion.  Contrary to plaintiff's contention, the phrase does not mean absent without reason.  The undisputed facts were that plaintiff was absent and that this absence was without leave.  Thus, plaintiff clearly violated this personnel rule and the Board properly concluded that plaintiff's discharge was justified.  Because this violation alone was sufficient cause for discharge, we need not address plaintiff's arguments regarding his violations of the remaining personnel rules.

Accordingly, for all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

O'Brien, P.J. and Frossard, J., concurring.

FOOTNOTES
1:     
During oral arguments, counsel for plaintiff attempted to argue that plaintiff may have had a justifiable reason for failing to respond to the City, namely, that he was too incapacitated to do so.  Although any such argument has been waived, we point out these facts showing the actions taken by plaintiff to illustrate the fallacy of any such argument. 

2:     
In these cases, the term "substantial evidence" is defined as that which a reasonable person would accept as sufficient or adequate to support a particular conclusion, and consisting of more than a mere scintilla but less than a preponderance of the evidence. 
See,
 e.g.
,
 Stone v. Department of Human Rights
, 299 Ill. App. 3d 306, 314-15, 700 N.E.2d 1105, 1111 (1998) (interpreting term "[s]ubstantial evidence" as contained in the Illinois Human Rights Act (775 ILCS 5/7A--102(D)(2)(West 1994))); 
Ameropan Oil Corp. v. Illinois Commerce Comm'n
, 298 Ill. App. 3d 341, 347, 698 N.E.2d 582 (1998) and 
Commonwealth Edison Co. v. Illinois Commerce Comm'n
, 295 Ill. App. 3d 311, 316, 692 N.E.2d 1350 (1998) (interpreting statutory requirement (220 ILCS 5/10--

201(e)(iv)(A)(West 1996)) that "substantial evidence" support findings of Illinois Commerce Commission in order that its decision not be reversed by court; see also 
C-Call Corp. v. Zoning Board of Appeals
, 298 Ill. App. 3d 1128, 1132, 700 N.E.2d 441 (1998)(noting courts' interpretation of term "substantial evidence" as it appears in administrative review provision of the federal Telecommunications Act (47 U.S.C.A. §332(c)(7)(West Supp. 1997)))

3:     
This definition does not differ substantially from that found in the Illinois cases cited in footnote 2.